31 P.3d 248

John R. ALBEE and Phyllis A. Albee, individually and as trustees of the Albee Living Trust, Plaintiffs–Respondents–Cross Appellants,

v.

Steven A. JUDY, Mayor, Ron Edinger, Chris Copstead, Deanna Goodlander, Dixie Reid, Susan Servick, Nancy Sue Wallace, Council Members, The City of Coeur D'Alene, Defendants–Appellants–Cross Respondents.

No. 26122.

Supreme Court of Idaho.

Coeur D'Alene, April 2001 Term.

Aug. 20, 2001.

Quane, Smith, Coeur d'Alene, for appellants. Randall R. Adams argued.

Penland & Munther, Boise, for respondents. Forrest R. Goodrum argued.

TROUT, Chief Justice.

This is an appeal from the district court's grant of partial summary judgment in favor of John and Phyllis Albee ("the Albees"), obligating the City of Coeur d'Alene ("the City") to provide water service to their property, and grant of partial summary judgment in favor of the City dismissing the Albees' cause of action for violation of civil rights pursuant to 42 U.S.C. § 1983 and attorney's fees under 42 U.S.C. § 1988.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The Albees own Lots 6 and 7 in Block One of the subdivision Springview Terrace, in Kootenai County. The subdivision and property are outside the municipal boundaries of the City of Coeur d'Alene.

The Springview Terrace subdivision was developed during the 1960's. In order to obtain a water supply for the subdivision, MC Inc. ("Developer") sought an extension of a water pipeline from Idaho Water Company. At that time, Idaho Water Company was the public water utility holding a franchise for the area where the subdivision was located. On January 22, 1965, Idaho Water Company and the Developer entered into an agreement ("1965 Agreement") wherein Idaho Water Company agreed to extend a water main to the proposed subdivision. In exchange, the Developer agreed to pay a portion of the cost, perform excavation, lay pipe and backfill the area. The 1965 Agreement also provided that Idaho Water Company would refund a portion of the money paid by the Developer for each connection to the water main for the first five years, not to exceed $4,923.60. Upon completion, the water main was turned over to Idaho Water Company to become part of their water distribution system. On December 19, 1968, the Kootenai County Commissioners and the Kootenai Health Officer approved the Springview Terrace subdivision, and the Kootenai County Recorder recorded the plat.

On December 28, 1974, the City purchased the water company property of the Idaho Water Company's Coeur d'Alene division. Following the purchase of the water company, the City continued to provide water service to those lots that had been previously connected.

In 1981, the Albees purchased Lot 6 in Springview Terrace, which had an existing house and a complete water system connected to the main water line.

In 1982, the City adopted Resolution 82–61, which outlined the City's policy concerning water services to property outside the municipal boundaries. Pursuant to the Resolution, the City included the Water Service Area and Main Extension Policies in the rules and regulations for the operation of the City water department. Resolution 82–61 provides, in part, that the City's water services would not be extended beyond the municipal boundaries unless the property fell within one of the enumerated exceptions to the policy.

In 1986, the Albees purchased Lot 7 in Springview Terrace. Lot 7 did not, and does not, have a complete water system installed. On June 4, 1997, the Albees made application to the Mayor and Council of the City of Coeur d'Alene for permission to connect to the water main adjacent to Lot 7. The City Council denied the Albees' request.

On May 10, 1999, the Albees filed a complaint against the City, its Mayor and City Council, alleging the City is obligated, as purchaser of the Idaho Water Company, to provide water service to the Albees' property. The Albees further claimed the denial of

a water connection for their property is a violation of 42 U.S.C. § 1983 and entitles them to attorney's fees under 42 U.S.C. § 1988. The Albees subsequently filed a Motion for Summary Judgment and on July 27, 1999, the district court heard oral argument on the motion. The district court issued its Memorandum Opinion and Order on August 13, 1999, granting the Albees' Motion for Summary Judgment concerning water service but dismissing the claims arising under 42 U.S.C. §§ 1983 and 1988. The City filed a Motion to Reconsider which was denied from the bench. The City then filed its Notice of Appeal to this Court.

## II.

## STANDARD OF REVIEW

This Court's review of a trial court's ruling on a motion for summary judgment is the same standard used by the trial court in originally ruling on the motion. *Sun Valley v. Rosholt, Robertson & Tucker,* 133 Idaho 1, 3, 981 P.2d 236, 238 (1999) (citing *Friel v. Boise City Hous. Auth.,* 126 Idaho 484, 887 P.2d 29 (1994)). Pursuant to I.R.C.P. 56(c), summary judgment must be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." This Court liberally construes the record in favor of the party opposing the motion for summary judgment and draws any reasonable inferences and conclusions in that party's favor. *Id.* at 4, 981 P.2d at 239, (citing *Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 869 P.2d 1365 (1994)). If the evidence reveals no disputed issues of material fact, what remains is a question of law, over which this Court exercises free review. *Farm Credit Bank of Spokane,* 125 Idaho at 272, 869 P.2d at 1367.

## III.

## DISCUSSION

**A. The district court properly granted summary judgment in favor of the Albees, obligating the City to provide water to Lot 7.**

The district court granted summary judgment, requiring the City to provide water service to the Albees' property, based on City Resolution 82–61, which incorporated Exhibit B including Paragraph 9, which states:

No new water service shall be provided to property outside the City limits except for that property having prior approval in the form of a subdivision, *with complete water system installed,* (approved prior to February 3, 1981), consumer orders, property abutting or adjoining mains installed under refundable water extension contracts, or other written agreements.

(emphasis in the original). Specifically, the district court found the Albees' property was entitled to water service under the exceptions listed in the Resolution because it "is property abutting or adjoining a main installed under a refundable water extension contract."

There is no dispute that Lot 7 is outside the City limits, or that it abuts a main water line. However, the City argues the district court erred in concluding the 1965 Agreement was a "refundable water extension contract" and, even if the 1965 Agreement were such a contract, the City's interpretation of the Resolution would not include the Albees' property within the exception.[1]

*1. The 1965 Agreement is a "refundable water extension contract."*

As noted above, Idaho Water Company and the Developer entered into the 1965

---

1. The City of Coeur d'Alene asserts that by purchasing Idaho Water Company in 1974, the City did not assume all of the obligations of the Idaho Water Company. Neither the parties, nor the district court, specifically addressed whether under contract law, the 1965 Agreement between the Developer and Idaho Water Company created a right of water service in the owners of the lots as third-party beneficiaries, whether those rights vested, or whether the contract between the City and Idaho Water Company could destroy those rights. Because the district court did not address the contract issues, and the parties did not brief the issue, this decision does not address whether the City can disavow contract obligations they may have had to property owners in Springview Terrace.

Agreement for Idaho Water Company to extend a water main to the proposed subdivision. In exchange, the Developer agreed to pay a portion of the cost and perform work necessary to extend the water line. The agreement specifically provided:

> [W]hen each subsequent consumer of water whose property is adjacent to said line has been connected to said pipe line . . . ., and has become a customer of Idaho Water company, said Corporation will pay to [Developer] the sum of ONE HUNDRED DOLLARS ($100) and shall continue said payment as service connections are made until the sum of Four–Thousand Nine–Hundred Twenty–Three and $^{60}/_{100}$ ($4,923.60) has been paid to the [Developer], provided and with exception, however, that if at the end of a period of five years from the date thereof, the sufficient customers have not been connected to said line to aggregate the sum of Four–Thousand Nine–Hundred Twenty–Three and $^{60}/_{100}$ ($4,923.60) then the amount theretofore paid by the Corporation shall be considered as payment in full for the pipe line. . . .

 Construction of the meaning of a contract begins with the language of the contract. "If the contract's terms are 'clear and unambiguous, the determination of the contract's meaning and legal effect are questions of law . . . . and the meaning of the contract and intent of the parties must be determined from the plain meaning of the contract's own words." *Taylor v. Browning,* 129 Idaho 483, 489, 927 P.2d 873, 879 (1996) (quoting *City of Idaho Falls v. Home Indemnity Co.,* 126 Idaho 604, 607, 888 P.2d 383, 386 (1995)). If, however, the contract is determined to be ambiguous, "the interpretation of the document is a question of fact which focuses upon the intent of the parties." *Ada County Assessor v. Taylor,* 124 Idaho 550, 553, 861 P.2d 1215, 1218 (1993). The threshold question of whether the contract is ambiguous is one of law and subject to free review by this Court. *Id.* (citing *Bondy v. Levy,* 121 Idaho 993, 996–97, 829 P.2d 1342, 1345–46 (1992)).

The plain language of the contract requires the Developer to compensate Idaho Water Company for the cost of the pipeline and to perform the excavation, pipe laying, and backfilling. Upon completion, demonstrated in part by the Developer being "refunded . . . . for the first consumer whose property is adjacent to said line," the pipeline belonged to Idaho Water company to be maintained and operated by them. The above quoted language further provides that for "each subsequent consumer of water whose property is adjacent to said line has been connected to said pipe line . . . . and has become a customer" Idaho Water Company will pay $100.00, until the sum of $4,923.60 has been paid or the five-year period has expired. Although the contract does not specifically use the phrase "refundable water extension contract," the plain language of the contract is unambiguous and is a contract for the extension of a water main with a refund provision for the costs incurred by the Developer; therefore, the district court was correct in finding, as a matter of law, that the contract is a "refundable water extension contract."

*2. The Albees' property falls within the exception of Resolution 82–61.*

 The City argues even if the contract is a "refundable water extension contract," the district court erred by not deferring to their interpretation and application of the exceptions to the City policy. For example, the City argues the exception does not apply to the Albees' property because they were not a party to the 1965 Agreement, the Agreement was disavowed by the City, and the Resolution should only be applied prospectively.

 A resolution, like a city ordinance, is interpreted under the same rules of construction as a statute. *Lewiston Pistol Club, Inc., v. Board of County Com'rs of Nez Perce County,* 96 Idaho 137, 138–39, 525 P.2d 332, 334–35 (1974). This interpretation is a question of law over which this Court exercises free review. *Id.* The objective in interpreting a resolution, statute, or ordinance is to derive the intent of the legislative body that adopted the act. *Payette River Property Owners Ass'n v. Board of County Com'rs of Valley County,* 132 Idaho 551, 557, 976 P.2d 477, 483 (1999) (citing *Ada County As-*

*sessor,* 123 Idaho at 428, 849 P.2d at 101). However, analysis of the legislative intent begins with the literal language of the enactment. *Id.* (citing *Matter of Permit No. 36–7200,* 121 Idaho 819, 823, 828 P.2d 848, 852 (1992)). If the language is clear and unambiguous, the Court need merely apply the statute without engaging in any statutory construction. *Thomas v. Worthington,* 132 Idaho 825, 829, 979 P.2d 1183, 1187 (1999) (citing *State v. Hagerman Water Right Owners, Inc.,* 130 Idaho 727, 732, 947 P.2d 400, 405 (1997)). This language should be given its plain, usual and ordinary meaning. *Matter of Permit No. 36–7200,* 121 Idaho at 823, 828 P.2d at 852. (citations omitted). Only where the language is ambiguous will this Court look to rules of construction for guidance and consider the reasonableness of proposed interpretations. *Payette River Property Owners Ass'n,* 132 Idaho at 557, 976 P.2d at 483. A resolution is ambiguous if reasonable minds might differ or be uncertain as to its meaning; however, ambiguity is not established "merely because an astute mind can devise more than one interpretation of it." *Matter of Permit No. 36–7200,* 121 Idaho at 823, 828 P.2d at 852. *See also, Payette River Property Owners Ass'n,* 132 Idaho at 557, 976 P.2d at 483.

The City relied on the policy set forth in City Resolution 82–61, Paragraph 9, to deny the Albees' application for water service. As quoted above, the Resolution provides:

> No new water service shall be provided to property outside the City limits except for that property having prior approval in the form of a subdivision, *with complete water system installed,* (approved prior to February 3, 1981), consumer orders, property abutting or adjoining mains installed under refundable water extension contracts, or other written agreements.

The language of the resolution clearly outlines the City's policy of not extending water service outside the City limits. In addition, it unambiguously provides exception to the City policy if the property is "abutting or adjoining mains installed under refundable water extension contracts." Lot 7 is outside the city limits, and it abuts or adjoins the main line installed under the 1965 Agree-

ment, a "refundable water extension contract"; therefore, the Albees' property fits squarely within the exception.

The district court properly found, as a matter of law, that the Resolution is unambiguous, and the Albees' property fits within the exception obligating the City to provide water service; therefore, there is no need for this Court to engage in the construction the City asks us to employ and there are no genuine issues of material fact to preclude summary judgment.

Because we are upholding the district court's decision obligating the City to provide water service to the Albees' property, we need not address the Albees' claims under 42 U.S.C. § 1983 and § 1988 and uphold the district judge's partial summary judgment dismissing those claims.

**B. Attorney's Fees.**

■ The Albees request attorney fees on appeal pursuant to I.C. § 12–121. An award of attorney fees under I.C. § 12–121 is appropriate where the appeal is "frivolous, unreasonable, or without foundation." *Pro Indiviso, Inc. v. Mid–Mile Holding Trust,* 131 Idaho 741, 963 P.2d 1178 (1998) (citing *Keller v. Rogstad,* 112 Idaho 484, 733 P.2d 705 (1987)). The City adopted an unambiguous resolution providing an exception to their denial of water service for "property abutting or adjoining mains installed under refundable water extension contracts," but refused to honor that exception in this case. The City's only evidence of a definition of "refundable water extension contract" that would deny water connection to the Albees' property is an affidavit of the City's current mayor simply expressing his view that "the 1965 Agreement is not a 'refundable water services agreement'." The arguments of the City, denying water service despite their own clearly expressed policy and exception, are frivolous and unreasonable and justify an award of fees under I.C. § 12–121.

**IV.**

**CONCLUSION**

The City's Resolution unambiguously provides for an exception to allow water service for "property abutting or adjoining mains

installed under refundable water extension contracts." The main water line abutting the Albees' property was installed pursuant to the 1965 Agreement, a refundable water extension contract. Because the Albees' property fits squarely within the City's stated exception, water service should be provided; therefore, the grant of partial summary judgment is affirmed. In addition, we affirm the grant of partial summary judgment against the Albees regarding their constitutional tort claims. We award attorney's fees and costs on appeal to the Albees.

Justices WALTERS, KIDWELL and EISMANN, concur.

Justice SCHROEDER specially concurring.

I agree with the result and reasoning of this Court. I write only to emphasize a concern. It is doubtful that a city has the right to purchase a public utility, replacing service in an area, and disavow obligations of service of that utility, no matter how artfully the city draws its ordinance or resolution. When a city purchases a utility that has an obligation to provide service, it is unlikely that the city has the right to pick and choose those service obligations it will honor and those it will not, absent an alternative arrangement for the provision of those services.