146 P.3d 632

The IDAHO CONSERVATION LEAGUE, INC., Petitioner–Respondent–Cross Appellant,

v.

The IDAHO STATE DEPARTMENT OF AGRICULTURE, Respondent–Appellant–Cross Respondent,

and

Idaho Cattle Association, Inc., Intervener–Cross–Respondent.

No. 31751.

Supreme Court of Idaho, Boise, February 2006 Term.

Aug. 28, 2006.

Rehearing Denied Nov. 8, 2006.

Honorable Lawrence G. Wasden, Attorney General, Boise, for appellant-cross respondent. Brett T. Delange argued.

ACLU of Idaho Foundation, Boise, for respondent-cross appellant. Emil R. Berg argued.

Stoel Rives LLP, Boise, for intervener-cross respondent. Teresa A. Hill argued.

TROUT, Justice.

This is an appeal from a district court decision directing the Idaho State Department of Agriculture (ISDA) to disclose the Nutrition Management Plans (NMPs) of certain feedlots to the Idaho Conservation League (ICL). The district court's decision denying ICL's motion to compel the NMPs of certain other feedlots is also being appealed. We conclude the district court correctly interpreted the relevant statutes and affirm its decisions.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to federal law, the Idaho Legislature adopted the Beef Cattle Environmental Control Act, which, among other things, requires beef cattle feedlot operators to provide an NMP for their facilities for ISDA's approval. *See* I.C. §§ 22–4901 through 4910. An NMP is a plan for "managing the amount, placement, form and timing of the land application of nutrients and soil amendments." I.C. § 22–4904(11). Apparently, for several years, those NMPs were prepared, approved by ISDA and then retained in ISDA files, and were routinely provided to ICL and others upon request. Then, in 2004, I.C. § 22–4906 was amended to provide, "Following department review and approval, the plan, and all copies of the plan, shall be returned to the operation and maintained on site. Such plans shall be available to the administrator on request." Immediately after the legislation as amended went into effect, ISDA returned all NMPs to the various feedlot operators and, since that time, has refused to keep any of the plans on site for longer than it takes to approve the plan and return it to the feedlot operator.

ICL made a Public Records Act request to the ISDA to disclose the NMPs for the Sunnyside Feedlot (Sunnyside), Aardema Heifer Lot (Aardema), Conversion, Inc. (Conversion), and Big Sky Heifer Ranch (Big Sky). *See* Public Records Act, I.C. §§ 9–337 through 350. ISDA responded that it could not provide any of the NMPs for those four entities because the NMPs had been returned to the feedlot operators. ICL then filed this action against ISDA, asking the district court to compel disclosure of the various NMPs. Ultimately, the Idaho Cattle Association was given permission to intervene on behalf of ISDA.

The district court ordered ISDA to disclose the NMPs for Aardema and Conversion, but not for Sunnyside and Big Sky. The court reasoned that because ISDA had authorized access to the NMPs pursuant to I.C. § 22–4906, under I.C. § 9–337(2), ISDA has a duty to disclose the Aardema and Conversion NMPs, even after they were returned to the feedlot owners. As to Sunnyside and Big Sky, however, the district court determined those NMPs need not be produced by ISDA because they had been filed using the Idaho OnePlan computer format, and a statute directs information so submitted is exempt from disclosure. *See* I.C. § 22–2718(4)(f) [1].

---

1. Idaho Code § 22–2718(4)(f) addresses information submitted through the Idaho OnePlan as follows:

In addition to the duties and powers hereinafter conferred upon the state soil conservation

ISDA appealed the district court's decision as to Aardema and Conversion, and ICL cross-appealed the court's determination as to Sunnyside and Big Sky. The Idaho Cattle Association intervened to support the district court's decision exempting the Idaho One-Plan documents.

## II.

### STANDARD OF REVIEW

 The interpretation of a statute is a question of law over which this Court exercises free review. *State v. Hart,* 135 Idaho 827, 829, 25 P.3d 850, 852 (2001). Interpretation of a statute begins with an examination of the statute's literal words. *State v. Burnight,* 132 Idaho 654, 659, 978 P.2d 214, 219 (1999). Where the language of a statute is plain and unambiguous, courts give effect to the statute as written, without engaging in statutory construction. *State v. Rhode,* 133 Idaho 459, 462, 988 P.2d 685, 688 (1999). Only where the language is ambiguous will this Court look to rules of construction for guidance and consider the reasonableness of proposed interpretations. *Albee v. Judy,* 136 Idaho 226, 231, 31 P.3d 248, 253 (2001).

## III.

### DISCUSSION

The issues presented in this appeal include (1) whether NMPs, in general, are subject to the Public Records Act; and (2) whether NMPs submitted through the Idaho OnePlan are exempt from disclosure.

### A. NMPs for Aardema and Conversion

 ISDA's principal argument is that because ISDA returns the NMPs to the feedlot operators, ISDA need not make those plans available to the public because it no longer has possession of the NMPs. Citing I.C. § 9–338(2), ISDA asserts the public has a right to inspect only records that are in the posses-

sion of the custodian of records. ISDA's argument is not persuasive because the focus on who has *possession* of the NMP misses the mark; the real issue before the Court is whether the NMP is a record subject to examination by the public.

A public record "includes, but is not limited to, any writing containing information relating to the conduct or administration of the public's business prepared, owned, used *or retained* by any state agency...." I.C. § 9–337[12](11)(emphasis added). Clearly, a document need not be retained by an agency to qualify as a public record. In fact, the only relevant statute using the word "possession" is the provision quoted by ISDA that simply directs the custodian of the records to make available photocopying equipment so the public may exercise its right to copy public records. *See* I.C. § 9–338(2) ("The right to copy public records shall include the right to make photographs or photographic or other copies while the records are in the possession of the custodian of the records using equipment provided by the public agency ..."). That an NMP is no longer in the ISDA's possession is irrelevant to the question of whether an NMP is a public record. The ISDA cannot seriously contend the NMPs are not used by the ISDA and do not relate to the "conduct or administration of the public's business." In fact, at oral argument, ISDA conceded the NMPs were public records. The only question remaining is whether those records may be examined by the public.

The Legislature has provided that every person has a right to examine any public record and "there is a presumption that all public records in Idaho are open at all reasonable times for inspection *except as otherwise expressly provided by statute.*" I.C. § 9–338(1). A comprehensive list of public records exempt from disclosure is found at I.C. §§ 9–340A through H. ISDA concedes

commission, it shall have the following responsibilities:
...
(f) To provide for the establishment and encouragement of the "Idaho OnePlan" as a primary computer-based conservation planning process for all natural resource concerns....

The information provided by those using the "Idaho OnePlan" shall be deemed to be trade secrets, production records or other proprietary information and shall be kept confidential and shall be exempt from disclosure pursuant to section 9–340D, Idaho Code.

the NMPs are not expressly exempt by statute. Even ISDA, then, does not read the requirement in I.C. § 22–4906 that NMPs are to be returned to the feedlot operators as creating an exemption from disclosure. Thus, the judicial inquiry is at an end: Because the NMPs are public records that are not exempted by statute, they may be examined by the public pursuant to I.C. § 9–338(1).

We are not persuaded by ISDA's attempts to circumvent these statutes requiring public disclosure by its argument that because the NMPs are no longer housed with ISDA, ISDA no longer has a duty to make the records available to the public. A state agency is expressly prohibited from preventing examination of a public record "by contracting with a nongovernmental body to perform any of its duties or functions." I.C. § 9–338(9). This statute indicates a clear policy by the Legislature that the public has a right to view and inspect records relating to the public's business and this right cannot be denied by the expediency of having some other entity conduct the public's business at some other location. Under I.C. § 9–338(1), the public's right to inspect is conditioned solely on whether the document is a public record that is not expressly exempted by statute.

Finally, ISDA argues the district court erred in its application of the term "custodian." A custodian is defined as "the person having personal custody and control of the public records in question. If no such designation is made by the public agency . . . then custodian means any public official having custody of, control of, or authorized access to public records. . . ." I.C. § 9–337(2). ISDA contends the district court erred in finding ISDA had "authorized access" to the NMPs because ISDA had a designated custodian—an ISDA administrator—such that the default custodian provision did not apply. ISDA makes this claim despite its contention that the requested NMPs were not in its designated custodian's personal custody and control, so "the ISDA did not err in failing to produce that which it does not have." This

argument is so disjointed as to not even qualify as circular: If the ISDA administrator did not have personal custody and control, then that administrator, by definition, was not a designated custodian. ISDA's concern that if all that is required to subject a document to disclosure is a governmental entity's authority to access a document, the universe of records available for public inspection would be exponentially increased ignores the fact that a document must first qualify as a public record before it even falls within the Public Records Act.

In any event, though there has been much debate about whether an ISDA official was a designated custodian or a default custodian and whether that person needed "possession" of or "authorized access" to the NMPs before the Public Records Act applied, we conclude such discussion is inapplicable to the issues before us. Whether an official is a "designated custodian" or is simply a custodian by virtue of the official's custody, control or authorized access to public records is irrelevant because the identification of the custodian is only necessary to determine who may designate the photocopying equipment to be used (I.C. § 9–338(2)); who must give a certified copy of the record or furnish a reasonable opportunity to inspect the record (I.C. § 9–338(3)); who verifies the identity of the person making the request (I.C. § 9–338(4)); who shall extend to the requestor reasonable comfort and facility (I.C. § 9–338(5)); who shall try to prevent alteration of the record while it is being examined (I.C. § 9–338(6)); who shall designate office hours for inspection of the record (I.C. § 9–338(7)); and who may require advance payment of copying costs (I.C. § 9–338(8)).[2] In other words, the identification of the custodian of the NMPs has no bearing on whether the NMPs are exempt from disclosure.

In sum, the Aardema and Conversion NMPs are public records for which there is no statutory exemption. If the Legislature should choose to make NMPs exempt from public inspection, it certainly could do so, as it has on a number of occasions for records compiled elsewhere which come into the

---

**2.** The term custodian is also referenced in I.C. § 9–340C(2) (addressing public employee retirement information); I.C. § 9–46 (immunity of custodian); and I.C. § 9–347 (agency guidelines).

hands of a public agency, such as court files of judicial proceedings, law enforcement records, trade secrets, draft legislation, tax commission records, and, as will be discussed below, certain information submitted via the Idaho OnePlan. *See* I.C. §§ 9–340A through H; I.C. § 22–2718(4)(f). If the Legislature need only provide that the records can be kept off-site by a non-governmental entity to make them exempt from disclosure, then the pages of listed exemptions in the Idaho Code would be entirely unnecessary. Consequently, until the Legislature expressly exempts all NMPs from the Public Records Act, this Court must abide by the clear directive that "[e]very person has a right to examine and take a copy of any public record . . . except as otherwise expressly provided by statute." I.C. § 9–338(1). The district court's order directing ISDA to disclose the Aardema and Conversion NMPs is affirmed.

### B. NMPs for Sunnyside and Big Sky

■ ICL contends the district court erred in finding the NMPs filed by Sunnyside and Big Sky using the Idaho OnePlan were exempt from disclosure pursuant to I.C. § 22–2718(4)(f). The Idaho OnePlan is mentioned in the laws governing soil conservation districts and is defined as a "computer-based system for improving efficiency and effectiveness of natural resource planning." *See* I.C. §§ 22–2715 through 2735; I.C. § 22–2717(13). The information submitted via the Idaho OnePlan "shall be deemed to be trade secrets, production records or other proprietary information and shall be kept confidential and *shall be exempt from disclosure pursuant to section 9–340D, Idaho Code.*" I.C. § 22–2718(4)(f) (emphasis added). As previously noted, the Public Records Act provides that public records are subject to inspection "except as otherwise expressly provided by statute." I.C. § 9–338(1). ICL contends the exemption language in I.C. § 22–2718(4)(f) only applies to voluntary conservation plans and does not apply to those NMPs that are mandatory under the Beef Cattle Environmental Control Act. ICL's position, however, is not expressed in the plain and unambiguous language of the statute. Moreover, there is at least some connection between the policies behind the Beef Cattle Environmental

Control Act ("protecting state natural resources including, surface water and ground water") and the laws governing soil conservation districts in which the Idaho OnePlan is described ("furthering the conservation, development, utilization, and disposal of water, and thereby to preserve natural resources"). This demonstrates legislative intent that the Idaho OnePlan is available for use in areas other than those directly arising under the soil conservation district provisions.

Consequently, applying our well-established rules of statutory interpretation, we conclude the NMPs submitted utilizing the Idaho OnePlan are exempt from disclosure under the Public Records Act. The district court's denial of ICL's petition to compel disclosure of the Sunnyside and Big Sky NMPs is affirmed.

### C. Attorney fees

■ ICL requests attorney fees on appeal under I.C. § 9–344(2), which addresses attorney fee awards in cases involving public records requests:

> If the court finds that the public official's decision to refuse disclosure is not justified, it shall order the public official to make the requested disclosure. If the court determines that the public official was justified in refusing to make the requested record available, he shall return the item to the public official without disclosing its content and shall enter an order supporting the decision refusing disclosure. In any such action, the court shall award reasonable costs and attorney fees to the prevailing party or parties, if it finds that the request or refusal to provide records was frivolously pursued.

As to the Aardema and Conversion NMPs, ICL is the prevailing party. These documents are clearly public records that are not expressly exempted by statute, regardless of whether ISDA retains possession of them. Because ISDA has focused on the irrelevant custodian issue, we conclude ISDA's appeal of this issue was frivolously pursued. Consequently, ICL is awarded the attorney fees incurred in its defense against ISDA's appeal.

■ The Idaho Cattle Association also requests attorney fees under I.C. § 9–344(2) for defending against ICL's cross-appeal of

the Idaho OnePlan issue. In light of the Cattle Association's position as an intervenor in this appeal, rather than the entity directly making or defending against a records request, we do not believe the request falls within the provisions of the statute and therefore, deny the request for attorney fees.

## IV.

## CONCLUSION

The district court's decision regarding the NMPs of Aardema and Conversion is affirmed because these NMPs qualify as public records for which there is no statutory exemption. In contrast, the NMPs for Sunnyside and Big Sky that were submitted through the Idaho OnePlan are exempt from disclosure because they fall within I.C. § 22–2718(4). Therefore, the district court's denial of ICL's petition to compel disclosure of the Sunnyside and Big Sky NMPs is affirmed. We award attorney fees to ICL on their defense to the ISDA appeal. Given the result of the appeal and cross-appeal, we do not award costs on appeal to either party.

Justice BURDICK and Justice Pro Tem KIDWELL concur.

Chief Justice SCHROEDER Dissenting as to Section III A and C.

Analysis of this case begins with the standard of review.

The interpretation of a statute is a question of law over which this Court exercises free review. *Martin v. State Farm Mut. Auto. Ins. Co.*, 138 Idaho 244, 246, 61 P.3d 601, 603 (2002). "The starting point for any statutory interpretation is the literal wording of the statute, and the court will give the statute's language its plain, obvious and rational meaning." *Id.* *Certain Underwriters At Lloyds, London v. Wolleson,* 141 Idaho 740, 741, 118 P.3d 72, 73 (2005).

The social desirability of a result must yield the language of the statutes, unless that language transgresses a constitutional standard. No such transgression is asserted in this case.

The Beef Cattle Environmental Control Act requires beef cattle animal feeding operations to submit NMPs to the ISDA for approval. When an operation receives approval of its NMP, it enjoys immunity from state enforcement actions due to violations of state water quality standards, except in limited circumstances. Idaho Code § 22–4906 of the Beef Cattle Environmental Control Act provides:

Each beef cattle animal feeding operation shall submit a nutrient management plan to the director for approval. Beef cattle animal feeding operations that are operating on or before July 1, 2000, shall submit a nutrient management plan to the director for approval no later than January 1, 2005. Any new operation commencing operations after July 1, 2000, shall not operate prior to the director's approval of a nutrient management plan. An approved nutrient management plan shall be implemented and considered a best management practice. *Following department review and approval, the plan, and all copies of the plan, shall be returned to the operation and maintained on site. Such plans shall be available to the administrator on request.*

(Amendment in italics). The legislature amended I.C. § 22–4906 of the Beef Cattle Environmental Control Act to include the last two sentences. The amendment became effective July 1, 2004, and the ISDA returned all beef cattle feedlot NMPs, and all copies thereof, to the beef cattle feedlot operators as a result.

"Public record" is defined by the Idaho Code as "but is not limited to, any writing containing information relating to the conduct or administration of the public's business prepared, owned, used or retained by any state agency, independent public body corporate and politic or local agency regardless of physical form or characteristics." I.C. § 9–337[ (12) ](11). The ISDA acknowledges that the NMPs of Aardema Heifer Lot and Conversion, Inc. are public records as defined by the Public Records Act when in its possession. The ICL relies upon I.C. § 9–338(1):

Every person has a right to examine and take a copy of any public record of this state and there is a presumption that all public records in Idaho are open at all reasonable times for inspection *except as otherwise expressly provided by statute.*

Idaho Code § 9–338(1) (emphasis added). The NMPs are not expressly exempt by statute but the amendment to I.C. § 22–4906 of the Beef Cattle Environmental Control Act took the NMPs out of the ISDA's possession, custody, and control.

The Public Records Act provides that every person has a right to examine public records "except as otherwise expressly provided by statute." I.C. § 9–338(1). Furthermore,

> The right to copy public records shall include the right to make photographs or photographic or other copies *while the records are in the possession of the custodian of the records* using equipment provided by the public agency or independent public body corporate and politic or using equipment designated by the custodian.

I.C. § 9–338(2) (emphasis added). The Court dismisses this provision as insignificant in the decision. It is not. "Custodian" is defined in the Public Records Act as follows:

> [T]he person having personal custody and control of the public records in question. If no such designation is made by the public agency or independent public body corporate and politic, then custodian means any public official having custody of, control of, or authorized access to public records and includes all delegates of such officials, employees or representatives.

I.C. § 9–337(2). While the ICL focuses on whether there has been an express exemption, the issue of whether the NMPs are to be disclosed rests on whether the ISDA is required to disclose the NMPs after they have been returned to the feedlot operators. This turns on the definition of "custodian."

The district court found that the ISDA has a duty to disclose the NMPs after they are returned to the feedlot owner and based its ruling on the "authorized access" provision of I.C. § 9–337(2). It appears the district court was erroneous when it relied upon the default portion of the definition which provides that if there is no designated custodian, "then custodian means any public official having custody of, control of, or authorized access to public records." I.C. § 9–337(2). The ISDA maintains and the record indicates that the Administrator of the ISDA's Division of Animal Industries, John Chatburn, is the designated custodian for records maintained by the ISDA. The ICL did not dispute the ISDA's claim below that Chatburn was the designated custodian below. However, the district court stated in its decision that "the ISDA had not designated a custodian for the Nutrient Management Plans."

The district court did not indicate why it reached the conclusion that the ISDA had not designated a custodian, and the evidence, including the affidavit of Chatburn, suggests that there is a designated custodian. Regardless, the result does not depend on whether there was or was not a designated custodian. The default provision in the absence of a designated custodian (defining custodian as one with "authorized access to public records") does not determine the definition of public records. The "authorized access" provision means that the custodian is a person who properly has access to the records within the agency's possession, custody and control, e.g., a clerk in charge of records as opposed to a security guard or maintenance person whose job does not include the right of access to the records.

The situation is simplified if there is a designated custodian, but if there is not, the default provision should not be read to be broader than the disclosure required by a designated custodian. There is nothing to indicate that the legislature intended the default provision to be more far-reaching than that of the designated custodian, and such an interpretation does not follow. Anyone with the right to access the records within the agency's possession, custody, and control should be able to respond to a Public Records Act request; this precludes a guard or the maintenance staff from being required to respond to the request.

Idaho law requires that approved NMPs be in the possession, custody, and control of the respective feedlot owners. Once the NMPs are returned to the feedlot operators as required by I.C. § 22–4906, they are no longer in the ISDA's possession. It is anomalous to conclude that the records are subject to disclosure while in the possession of the ISDA but not after they leave that possession, though they must be retained by the feedlot owners and are available to the administrator on request. Strong policy argu-

ments can be made against such a result. However, that is an issue for the legislature which amended I.C. § 22–4906 with knowledge of its potential impact on public records law. It is for the legislature to rewrite its statutes, not this Court.

The Court's award of attorney fees in this case compounds the error it makes. The ICL made a good faith argument presenting a legitimate issue of statutory interpretation. Two members of this Court agree with it. The position is certainly not frivolous.

Justice EISMANN, concurring in the dissent of Chief Justice Schroeder.

I fully concur in the dissent of Chief Justice Schroeder. I write only to add that the majority opinion simply holds: Once a public document forever a public document. Such reasoning could require agencies to search landfills for public documents they threw away. Fortunately, this being a matter controlled by statute the legislature can correct the majority's error if it so desires.