224 P.3d 458

Mary C. CURLEE, Plaintiff–Appellant,

v.

**KOOTENAI COUNTY FIRE & RESCUE,**
**Defendant–Respondent.**

No. 34460.

Supreme Court of Idaho,
Boise, September 2008 Term.

Oct. 16, 2008.

Rude, Jackson & Daugharty, LLP, Coeur d'Alene, for appellant.

Ramsden & Lyons, Coeur d'Alene, for respondent.

HORTON, Justice.

Appellant Mary C. Curlee (Curlee), a former employee of Respondent Kootenai County Fire and Rescue (KCFR), was discharged on October 13, 2004, after her notes detailing the minute-by-minute activities of two of her coworkers, Jackie Sharp (Sharp) and Lisa Wheeler (Wheeler), to whom she assigned the fictitious names "Muffy" and "Buffy," were discovered by Sharp on Curlee's desk. Curlee filed suit against KCFR, alleging that she was fired in violation of the Idaho Protection of Public Employees Act as her notes documented the waste of public funds, property, or manpower. The district court granted summary judgment in favor of KCFR and Curlee appealed. The Court of Appeals affirmed the district court's grant of summary judgment. This Court granted review *sua sponte*. We vacate the district court's grant of summary judgment and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Beginning in 1999, Curlee held several office positions within the KCFR system. In 2002, Curlee was transferred into the administrative offices of KCFR. When Curlee arrived, Wheeler and Sharp were already working there as a bookkeeper and an administrative assistant, respectively. Initially, Curlee performed data entry duties; she was later assigned to the front-desk receptionist position. While in her data entry position, Curlee became displeased with what she considered to be an inordinate amount of time Wheeler and Sharp spent on personal conversations during the workday. Curlee perceived the actions as wasteful and complained to the Fire Chief, Ronald Sampert. When she complained to Chief Sampert about Wheeler and Sharp's behavior, Curlee also suggested that she be moved from the receptionist position to a more important position and that the office could be run by two, not three, employees.

After being reassigned to the receptionist position, Curlee was in direct daily contact with Wheeler and Sharp. Growing more frustrated with the actions of her coworkers, Curlee eventually voiced her concerns to two fire commissioners, two lieutenants, and the deputy chief. Each of these individuals listened to her complaints. The deputy chief and one of the lieutenants informed Curlee they would discuss her concerns with Chief Sampert. Curlee claims that both of the lieutenants told her she should document the behavior of her coworkers that she believed to be wasteful.

Over the course of the next several months, Curlee maintained a detailed, handwritten, minute-by-minute log of the activities engaged in by her two coworkers which Curlee deemed to be wasteful. During this time period, Curlee again expressed her frustration to Chief Sampert. In response, he expressed a desire to ease the tension in the office and to have all of his employees work together. One of the fire commissioners told Curlee that he and another commissioner

were "working on" Curlee's concerns. Curlee did not discuss or disclose the contents of her log during these conversations or at any other time to any employee of KCFR.

Approximately seven months after Curlee began keeping her log, Sharp inadvertently discovered the log when she was attending the front desk during Curlee's lunch break. Sharp showed the log to Wheeler. Both women noticed that, within the log, Curlee had frequently referred to them as "Muffy" and "Buffy" rather than by their names. Wheeler and Sharp made photocopies of the log and submitted them to Chief Sampert. Both women were angry that Curlee had been recording their office activities and felt that being referred to as "Muffy" and "Buffy" was derogatory and insulting. Chief Sampert agreed to speak with Curlee about the log.

Chief Sampert, accompanied by the deputy chief, spoke with Curlee about the log. When asked what she meant to accomplish by keeping the log, Curlee responded that everyone in the office wasted too much time and she wanted to show how much. Curlee also informed Chief Sampert that she could document anything she wanted to. Chief Sampert informed Curlee that her coworkers were upset and insulted by the derogatory names she had used and that all offices had wasted time. Chief Sampert advised Curlee that she was not trying to get along with the others and that her behavior was exacerbating office tension. He indicated that he was trying to build a team, and her actions were detrimental to the team. Curlee advised Chief Sampert that she and the two coworkers would never be a team. Chief Sampert gave Curlee the remainder of the day off as paid leave and asked her to go home and develop a solution to ease the workplace tension.

Curlee returned to work the next day. Chief Sampert asked her if she had thought about the problem and what they might do about it. Curlee responded that she did not know what to do, that she would not apologize, and that she had done nothing wrong. When Chief Sampert discussed the importance of not creating dissension in the office and working together, Curlee responded that it was her coworkers who found the log and gave it to him. Curlee reiterated that she would not apologize and would never be able to have a good working relationship with her two coworkers. Her employment was then terminated.

Curlee filed suit against KCFR, alleging that she was wrongfully terminated in violation of the Idaho Protection of Public Employees Act for documenting a waste of public funds and manpower. KCFR answered Curlee's complaint, denied the allegations, and moved for summary judgment. KCFR moved to strike an affidavit submitted by Curlee from Suzanne Johnson, a former KCFR employee who had worked with Sharp prior to Curlee's transfer into the administrative office. The district court granted the motion to strike and granted KCFR's motion for summary judgment. Curlee filed a motion to reconsider, which the district court denied.

## II. STANDARD OF REVIEW

"While this Court gives serious consideration to the views of the Court of Appeals when considering a case on review from that court, this Court reviews the district court's decision directly." *Hauschulz v. State*, 144 Idaho 834, 837, 172 P.3d 1109, 1112 (2007) (citing *Workman v. State*, 144 Idaho 518, 522, 164 P.3d 798, 802 (2007)). This Court reviews an appeal from an order of summary judgment *de novo,* and this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Lockheed Martin Corp. v. Idaho State Tax Comm'n*, 142 Idaho 790, 793, 134 P.3d 641, 644 (2006). When ruling on a motion for summary judgment, disputed facts are construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are drawn in favor of the non-moving party. *Lockheed Martin*, 142 Idaho at 793, 134 P.3d at 644. "Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* "I.R.C.P. 56(e) provides that the adverse

party may not rest upon mere allegations in the pleadings, but must set forth by affidavit specific facts showing there is a genuine issue for trial." *Rhodehouse v. Stutts*, 125 Idaho 208, 211, 868 P.2d 1224, 1227 (1994).

## III. ANALYSIS

Curlee claims that she was discharged in violation of the Idaho Protection of Public Employees Act, I.C. § 6–2101 *et seq.* (the Act), which is commonly referred to as a "whistleblower act." The Act "seeks to 'protect the integrity of government by providing a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of a law, rule or regulation.'" *Mallonee v. State*, 139 Idaho 615, 619, 84 P.3d 551, 555 (2004) (quoting I.C. § 6–2101). On appeal, Curlee asserts three points of error: first, she asserts it was error to grant summary judgment to KCFR; second, she asserts it was error to strike Suzanne Johnson's affidavit; and third, she asserts it was error to deny her motion to reconsider, alter, or amend. On appeal, KCFR raises the issue of whether the district court's grant of summary judgment can be affirmed under a different legal theory, namely that Curlee's actions were not protected by the Act. We consider these issues below.

### A. The district court erred by granting summary judgment to KCFR.

The primary issue in this case is whether the district court erred in granting summary judgment in favor of KCFR. Curlee's principal argument is that the district court's grant of summary judgment in favor of KCFR was improper because the district court did not evaluate the evidence in accordance with proper standards for deciding summary judgment motions. Specifically, Curlee argues that the district court usurped the function of the jury by making findings of fact and drawing inferences from the evidence in favor of KCFR, rather than determining

whether she demonstrated the existence of a genuine issue of material fact.

The district court ruled on KCFR's motion for summary judgment from the bench, holding that Curlee had failed to demonstrate a causal connection between her keeping of the log and her termination. The district court noted that, although Curlee had presented evidence that she may have been terminated for a reason protected by the Act (her keeping of the log), KCFR presented evidence of a legitimate reason for her discharge (her refusal to follow Chief Sampert's order to take measures to resolve the tension she had created with her coworkers by using the names Muffy and Buffy in her log). The district court stated that, once KCFR presented a legitimate reason for her termination, the burden shifted back to Curlee to "poke holes" in KCFR's rationale for her termination. The district court held that Curlee had not carried her burden of producing evidence that showed a genuine issue of material fact as to whether she was discharged for any reason other than her refusal to work productively with her coworkers.

■ Although the district court did not specifically identify the basis for its ruling, it appears that the burden-shifting standard that it applied is derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a U.S. Supreme Court case involving employment discrimination, and its progeny.[1] A summary of the *McDonnell Douglas* burden-shifting analysis is as follows: (1) once a plaintiff produces evidence that she suffered from an adverse discriminatory employment decision; then (2) the burden shifts to the employer to produce evidence that the employment decision was based on a legitimate reason; and then (3) the burden shifts back to the plaintiff to prove that the legitimate non-discriminatory reason the employer proffers is in fact a pretext. *Id.* The *McDonnell Douglas* analysis has been applied widely by federal and state courts (including this Court) faced with employment discrimination

---

1. Although the district court did not mention *McDonnell Douglas* specifically, KCFR argues in its supplemental brief that "Under the *McDonnell Douglas* framework, the burden shifted to

Curlee to demonstrate that KCFR's alleged reason for the adverse employment decision was a pretext for another motive which was in violation of the statute. This Curlee has failed to do."

cases. *See e.g. Bowles v. Keating,* 100 Idaho 808, 812–14, 606 P.2d 458, 462–64 (1979); *Hoppe v. McDonald,* 103 Idaho 33, 36, 644 P.2d 355, 358 (1982). However, this Court has yet to extend the *McDonnell Douglas* analysis to apply to cases of retaliatory discharge under Idaho's whistleblower act.

■ Some sister states and federal courts have applied the *McDonnell Douglas* analysis in cases involving unlawful discharge for actions protected under whistleblower statutes similar to Idaho's. *See e.g. LaFond v. General Physics Serv. Corp.,* 50 F.3d 165, 172 (2d Cir.1995) (addressing the application of the *McDonnell Douglas* three-part test to the Connecticut whistleblower statute); *Stevens v. St. Louis Univ. Med. Ctr.,* 831 F.Supp. 737, 741 (E.D.Mo.1993) (applying *McDonnell Douglas* standards in the absence of state case law identifying the elements of a whistleblower claim under Missouri law); *Rosen v. Transx Ltd.,* 816 F.Supp. 1364, 1369–70 (D.Minn.1993) (analyzing Minnesota's whistleblower statute under the *McDonnell Douglas* test). When confronted with matters of first impression involving Idaho statutes, this Court may glean insight from the interpretations of sister states concerning similar or identical statutes. *See e.g. Corp. of Presiding Bishop of Church of Jesus Christ of Latter–Day Saints v. Ada County,* 123 Idaho 410, 418, 849 P.2d 83, 91 (1993); *Ada County Assessor v. Roman Catholic Diocese of Boise,* 123 Idaho 425, 431, 849 P.2d 98, 104 (1993). However, while the construction of a statute by another state may be persuasive, it is not conclusive and we may refuse to adopt the foreign construction. *Mochel v. Cleveland,* 51 Idaho 468, 480, 5 P.2d 549, 553 (1930). We find the decisions of our sister states to be well-reasoned and conclude that the *McDonnell Douglas* analysis should be applied to actions arising under Idaho's whistleblower act.

■ When the *McDonnell Douglas* analysis is applied to cases involving retaliatory discharge under a whistleblower statute, the test is as follows: (1) the plaintiff must establish a prima facie case of retaliatory conduct for an action protected by the relevant whistleblower statute; (2) once the plaintiff demonstrates a prima facie case, the defendant is obligated to produce evidence which, if taken as true, would permit the conclusion that there was a non-retaliatory reason for the adverse action; and (3) if the defendant articulates a legitimate non-retaliatory reason for discharge, then the burden shifts to the plaintiff to prove by a preponderance of the evidence that the reason the defendant offers is a pretext for retaliatory conduct. *LaFond,* 50 F.3d at 173.

While other courts have found the *McDonnell Douglas* framework useful in approaching cases under state whistleblower statutes, those courts have also noted that the "burden-shifting rule of *McDonnell Douglas,* however, has little or no application at the summary judgment stage. The rule explicitly governs the burden of persuasion at trial." *Heng v. Rotech Med. Corp.,* 688 N.W.2d 389, 401 (N.D.2004) (construing North Dakota's whistleblower statute); *see also LaFond,* 50 F.3d at 174. We find this foreign jurisprudence well-reasoned. Accordingly, we conclude that the district court erroneously held Curlee to a higher burden of proof than is permissible at summary judgment by requiring her to "poke holes" in KCFR's proffered rationale for discharging her and to demonstrate that the grounds advanced as justification for her termination were a pretext for retaliatory conduct. While this burden-shifting analysis is applicable at trial, it was error for the district court to apply it at the summary judgment stage.

■ The role of the trial court at the summary judgment stage is limited to discerning whether there are any genuine issues of material fact to be tried. *LaFond* 50 F.3d at 174. It does not extend to deciding them. *Id.* Therefore, in order to survive summary judgment, Curlee only had the burden of presenting evidence from which a rational inference of retaliatory discharge under the whistleblower act could be drawn. *Id.* If Curlee presented a prima facie case of retaliatory discharge, the district court was not free to accept as true the employer's testimony that she was fired for some other legitimate reason. *Id.* We conclude that the district court erred by accepting KCFR's justification for discharging Curlee and re-

quiring her to show that the justification was, in fact, a pretext.

■ We find that Curlee presented a prima facie case of retaliatory discharge. The close relation in time between the discovery of her documentation of her coworkers' waste and her termination supports the reasonable inference that Curlee was discharged for that documentation. "Although there must be something more than pure speculation or conjecture, circumstantial evidence may provide an inference of causation. Proximity in time between the protected activity and the adverse employment action is 'particularly significant.'" *Heng,* 688 N.W.2d at 399 (internal citation omitted). We recognize that a jury may well decide that KCFR did not discharge Curlee in retaliation for her documentation of waste. However, that determination properly belongs to the jury at trial and not the judge at the summary judgment stage. For that reason, we vacate the district court's order granting summary judgment in favor of KCFR.

**B. Genuine issues of material fact remain as to whether Curlee was fired for conduct protected under the whistleblower statute.**

■ On appeal, KCFR advances the alternative argument that summary judgment was appropriate because Curlee failed to establish that her conduct fell under the protection of the Act. This issue was not addressed by the district court. However, the appellate court may affirm the trial court on a theory not relied upon below. *McCuskey v. Canyon County,* 123 Idaho 657, 663, 851 P.2d 953, 959 (1993) (citing *Andre v. Morrow,* 106 Idaho 455, 459, 680 P.2d 1355, 1359 (1984)). Thus, we consider the issue herein.

Under Idaho's whistleblower act, a prima facie case for retaliatory discharge requires Curlee to show: (1) she was an "employee" that engaged or intended to engage in protected activity; (2) her "employer" took adverse action against her, and (3) the existence of a causal connection between the protected activity and the employer's adverse action. I.C. §§ 6–2104 & 6–2105(4); *see also Dahlberg v. Lutheran Social Services of North Dakota,* 625 N.W.2d 241, 253 (N.D.

2001) (identifying the elements of a prima facie case under North Dakota's whistleblower statute); *Calvit v. Minneapolis Pub. Sch.,* 122 F.3d 1112, 1118 (8th Cir.1997) (articulating the elements of a prima facie case under Minnesota's whistleblower statute). There is no question that, as defined by the Act, Curlee is an "employee," KCFR is an "employer," and that discharge constitutes "adverse action." I.C. § 6–2103. As we concluded in Part III(A), *supra,* Curlee has met her summary judgment burden of demonstrating that there is a genuine issue of material fact as to whether her discharge was causally related to her maintaining the log of her coworkers' conduct. The only remaining question is whether there is a genuine issue of material fact as to whether Curlee's conduct in maintaining the log was "protected activity."

KCFR argues that Curlee's actions are not protected activities under I.C. § 6–2104 because (1) she did not communicate in good faith the existence of any waste of public funds, property or manpower, which is protected activity under I.C. § 6–2104(1)(a); and (2) she did not participate or give information in an investigation, hearing, court proceeding, legislative or other inquiry, or other form of administrative review, which is protected activity under I.C. § 6–2104(2). We disagree.

An employee's cause of action under the whistleblower act is defined in I.C. § 6–2105(4):

> To prevail in an action brought under the authority of this section, the employee shall establish, by a preponderance of the evidence, that the employee has suffered an adverse action because the employee, or a person acting on his behalf engaged or intended to engage in an activity protected under section 6–2104, Idaho Code.

KCFR's position is based primarily on its interpretation of specific words in the whistleblower act, which provides:

> (1)(a) An employer may not take adverse action against an employee because the employee, or a person authorized to act on behalf of the employee, ***communicates*** in good faith the existence of any waste of

public funds, property or manpower, or a violation or suspected violation of a law, rule or regulation adopted under the law of this state, a political subdivision of this state or the United States. Such communication shall be made at a time and in a manner which gives the employer reasonable opportunity to correct the waste or violation.

(b) For purposes of subsection (1)(a) of this section, an employee communicates in good faith if there is a reasonable basis in fact for the communication. Good faith is lacking where the employee knew or reasonably ought to have known that the report is malicious, false or frivolous.

(2) An employer may not take adverse action against an employee because an employee participates or gives information in an *investigation,* hearing, court proceeding, legislative or other inquiry, or other form of administrative review.

(3) An employer may not take adverse action against an employee because the employee has objected to or refused to carry out a directive that the employee reasonably believes violates a law or a rule or regulation adopted under the authority of the laws of this state, political subdivision of this state or the United States.

(4) An employer may not implement rules or policies that unreasonably restrict an employee's ability to document the existence of any waste of public funds, property or manpower, or a violation, or suspected violation of any laws, rules or regulations.

I.C. § 6–2104 (emphasis added).

■ Our standard of review for statutory interpretation is well established:

The interpretation of a statute is a question of law over which this Court exercises free review. *State v. Hart,* 135 Idaho 827, 829, 25 P.3d 850, 852 (2001). Interpretation of a statute begins with an examination of the statute's literal words. *State v. Burnight,* 132 Idaho 654, 659, 978 P.2d 214, 219 (1999). Where the language of a statute is plain and unambiguous, courts give effect to the statute as written, without engaging in statutory construction. *State v. Rhode,* 133 Idaho 459, 462, 988

P.2d 685, 688 (1999). Only where the language is ambiguous will this Court look to rules of construction for guidance and consider the reasonableness of proposed interpretations. *Albee v. Judy,* 136 Idaho 226, 231, 31 P.3d 248, 253 (2001).

*Idaho Conservation League, Inc. v. Idaho State Dep't of Agric.,* 143 Idaho 366, 368, 146 P.3d 632, 634 (2006). "Moreover, unless a contrary purpose is clearly indicated, ordinary words will be given their ordinary meaning when construing a statute." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter–Day Saints,* 123 Idaho at 415, 849 P.2d at 88 (citing *Bunt v. City of Garden City,* 118 Idaho 427, 430, 797 P.2d 135, 138 (1990)). In construing a statute, this Court will not deal in any subtle refinements of the legislation, but will ascertain and give effect to the purpose and intent of the legislature, based on the whole act and every word therein, lending substance and meaning to the provisions. *George W. Watkins Family v. Messenger,* 118 Idaho 537, 539–40, 797 P.2d 1385, 1387–88 (1990).

### 1. *"Communication" of waste*

■ KCFR argues that Curlee's actions fall outside the protection of the Act because they were not a "communication." Idaho Code § 6–2104(1)(a) specifically provides:

An employer may not take adverse action against an employee because the employee … *communicates in good faith* the existence of any waste of public funds, property or manpower…. Such communication shall be made at a time and in a manner which gives the employer reasonable opportunity to correct the waste or violation.

(emphasis added). The statute defines "communicate" as "a verbal or written report." I.C. § 6–2103(2). The statute does not, however, define "report." The dictionary definition of "report" is to "give an account of." *Delgado v. Jim Wells County,* 82 S.W.3d 640, 642 (Tex.Ct.App.2002) (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1990) to construe the ordinary meaning of "report" under Texas's whistleblower statute).

KCFR argues that, while the documentation was written, there was no evidence that Curlee prepared the documentation as a written report or ever intended to submit it to her supervisors. KCFR posits that Curlee failed to establish that she was keeping these notes as part of a report or that she ever intended to pass them along to a supervisor. KCFR points out that it was her coworkers that inadvertently discovered the notes that Curlee kept in secret and that when Curlee was questioned about them by Chief Sampert she merely stated that she could keep them if she wanted to. Therefore, KCFR asserts that her notes were not a communication protected by the whistleblower act. We are not persuaded by this argument.

It was not necessary that Curlee actually have presented the notes to her employer in order to constitute a report. Idaho's whistleblower act only requires that the employee *"intended* to engage in an action protected under the act." I.C. § 6–2105(4) (emphasis added). Curlee presented evidence that her supervisors instructed her to document the waste. By way of affidavit, she testified she "began documenting the things in the office to support the fact that there was waste of manpower and mismanagement in the office" and that her "notes were part of the communication of such wastefulness of manpower and public funds in the office." A reasonable inference may be drawn that she intended to deliver the report to her supervisors at some future time, but that action was preempted by the inadvertent discovery of her notes by Sharp. Indeed, it appears that the district judge drew this inference, as he stated that "it seems to me from my reading of what is admissible the Plaintiff was assembling information that she felt reported waste...." We conclude that KCFR is not entitled to summary judgment in its favor on this ground.

■ KCFR argues in the alternative that Curlee's actions are not protected under the Act because the notes were not kept in "good faith." The statute defines good faith as follows: "an employee communicates in good faith if there is a reasonable basis in fact for the communication. *Good faith is lacking where the employee knew or reasonably ought to have known that the report is malicious,* false or frivolous." I.C. § 6–2104(1)(b) (emphasis added). KCFR argues that that the reports were malicious because the attribution of the names "Muffy" and "Buffy" to Wheeler and Sharp was disparaging.

The statute does not define malice. The dictionary defines malicious as: "harboring ill will or enmity ... proceeding from hatred or ill will ... playfully or archly mischievous ... [c]lever, cunning ... having or done with, wicked or mischievous intentions or motives ... [i]ll-disposed, spiteful, resentful, bitter, rancorous, sinister, unpropitious." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1367 (1966). It is clear from the record that Curlee disliked Wheeler and Sharp and resented working with them. Other courts have held that animosity between the discharged employee and the subjects of their reports compromises any finding that the employee's complaints were made in "good faith" as defined by whistleblower law. *Cipriani v. Lycoming County Housing Auth.,* 177 F.Supp.2d 303, 331 (M.D.Pa.2001) (discussing the requirement of good faith under Pennsylvania's whistleblower statute).

KCFR points to *Baird v. Cutler,* 883 F.Supp. 591 (D.Utah 1995), a case under the Utah whistleblower act, where it was stated: "Discipline for failure to abide by reasonable established procedures, or for rudeness or incivility, even when it occurs in connection with 'whistleblowing,' does not constitute a violation of the 'Whistleblower Act.'" *Id.* at 606. KCFR argues that even if Curlee's log was a communication that reported waste, her actions nonetheless fell outside of the protection of the statute because they were not made in good faith, and that her incivility was the true reason for her discharge.

■ From the factual averments contained in the affidavits, it could be inferred that when Curlee initially approached Chief Sampert about the wastefulness of Wheeler and Sharp she had ulterior motives of personal gain and promotion. Some courts have required that "we must not look only at the contents of the report, but also at the reporter's purpose in making the report." *Dahl-*

*berg,* 625 N.W.2d at 254. For instance, the whistleblower statutes of some states require that, as an element of good faith, the employee not take the actions for personal gain or consideration. *See e.g. Cipriani,* 177 F.Supp.2d at 331; *Albright v. City of Philadelphia,* 399 F.Supp.2d 575, 595–96 (E.D.Pa. 2005). However, the Idaho whistleblower act does not contain similar language. Therefore, although it may fall into the overall consideration of whether she acted in good faith or not, the fact that Curlee was hoping to gain personally from reporting the waste of Wheeler and Sharp does not foreclose a finding that her actions were protected by the Idaho whistleblower act.

Curlee claims that she used the names Muffy and Buffy because Wheeler and Sharp reminded her of characters from a movie. Whether an employee has made a report in good faith is a question of fact, and summary judgment is appropriate only if, after viewing the evidence in the light most favorable to Curlee, reasonable minds could only conclude that her use of the names Muffy and Buffy was indeed malicious. We conclude that the question whether Curlee's usage of the names Muffy and Buffy shows that the report was malicious is an issue of fact to be decided by a jury and not by this Court on appeal.

### 2. *Participation in an "investigation"*

Idaho Code § 6–2104(2) provides: "An employer may not take adverse action against an employee because an employee participates or gives information in an *investigation,* hearing, court proceeding, legislative or other inquiry, or other form of administrative review." (emphasis added). Curlee argues that she was participating in an investigation of the wasteful activities of her coworkers. In support of this claim, she asserts that two lieutenants told her to document waste after she informed them of Wheeler's and Sharp's conduct. KCFR asserts that "[p]articipation or giving information in an investigation, hearing, court proceeding, legislative or other inquiry or other form of administrative review requires more than simply documenting alleged wasteful activities by co-workers" and that Curlee

"did not show the trial court that she was participating or giving information in any investigation or other form of administrative review."

The word "investigate" is not defined in the statute. Therefore, we must give it its plain meaning. An ordinary dictionary defines "investigate" as follows: "to track ... to observe or study by close examination and systematic inquiry ... to make a systematic examination; *esp*: to conduct an official inquiry." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 616 (10th ed.1993) (emphasis added). The legal dictionary of first resort defines the word as follows: "to follow up step by step by patient inquiry or observation ... to examine and inquire into with care and accuracy; to find out by careful inquisition; examination...." BLACK'S LAW DICTIONARY 740 (5th ed.1979). Although the word "investigation" may be narrowly defined as an official inquiry, we conclude that the plain meaning of the word is broader and encompasses actions involving close examination or observation. In view of the evidence that Curlee's note-taking was the product of her superiors' direction to "document" her allegations of waste, we conclude that there is a genuine issue of material fact as to whether she intended to give information in an investigation.

### C. The remaining issues need not be addressed by this Court on appeal.

Curlee asserts that the district court erred by striking Suzanne Johnson's affidavit and by denying her motion to reconsider, alter, or amend. Because we have concluded that the district court erred by granting KCFR's motion for summary judgment, it is not necessary to address whether the district court erred by striking Johnson's affidavit and denying Curlee's motion to reconsider, alter, or amend.

### IV. CONCLUSION

We vacate the district court's order granting summary judgment in favor of KCFR. The case is remanded to the district court for further proceedings consistent with this opinion. Costs are awarded to Curlee.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES concur.