# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42332

|  |  |  |
|---|---|---|
| JOHN F. THORNTON, | ) | |
| | ) | |
|     Plaintiff-Counterdefendant-<br>    Appellant, | ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| VAL THORNTON, | ) | |
| | ) | |
|     Intervenor-Appellant, | ) | |
| | ) | Boise, August 2016 Term |
| v. | ) | |
| | ) | 2016 Opinion No. 103 |
| MARY E. PANDREA, a single woman | ) | |
| individually and as Trustee of the Kari A. | ) | Filed: September 14, 2016 |
| Clark and Mary E. Pandrea Revocable Trust | ) | |
| u/a April 9, 2002, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
|     Defendant-Respondent, | ) | |
| and | ) | |
| | ) | |
| KENNETH J. BARRETT and DEANNA L. | ) | |
| BARRETT, husband and wife, | ) | |
| | ) | |
|     Defendants-Counterclaimants-<br>    Respondents. | ) ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County.  Hon. John T. Mitchell, District Judge.

The judgment of the district court is affirmed.

Thornton Law Office, Sandpoint, for appellant. Valerie P. Thornton argued.

Lukins & Annis, PS, Coeur d'Alene, for respondent. Michael G. Schmidt argued.

_____

J. JONES, Chief Justice

Appellant John Thornton ("Mr. Thornton"), represented by his wife Val Thornton ("Ms. Thornton"), sued sisters Mary Pandrea and Kari Clark to quiet title to an easement reserved in their names on real property he owns that is adjacent to real property that was jointly owned by the sisters. Clark counterclaimed against Mr. Thornton, seeking declaratory relief establishing her rights in the easement and damages for interference with her easement rights. While this case was pending, the real property jointly owned by Pandrea and Clark was judicially partitioned in a separate proceeding; now Pandrea is the sole owner of the property adjacent to the easement in question and Clark owns nearby non-adjacent property.

The district court granted Clark's motion for summary judgment on all of Mr. Thornton's claims against her and on all her counterclaims except her claim for damages. The court denied Mr. Thornton's motion for summary judgment and subsequent motion for reconsideration. By stipulation, the court dismissed Mr. Thornton's claims against Pandrea and Clark's damages claim against Mr. Thornton. After all claims were adjudicated, the district court awarded attorney fees to Clark against Mr. Thornton under Idaho Code section 12-121 and against both Mr. Thornton and Ms. Thornton jointly and severally as Rule 11 sanctions. Mr. Thornton appeals several decisions of the district court. Ms. Thornton, as intervenor, appeals the district court's imposition of sanctions. After entry of judgment, Kenneth Barrett and Deanna Barrett ("the Barretts") purchased Clark's property and substituted in the stead of Clark in the underlying action and in this appeal. Mr. Thornton moved for a stay of execution and waiver of supersedeas bond, which the district court denied. The court granted the Barretts' motion for sanctions against Mr. Thornton and Ms. Thornton based on the motion for stay.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The primary decision appealed from is the district court's grant of summary judgment to Clark. Accordingly, this factual background focuses on those facts that are relevant to this appeal and were in evidence before the district court at the time of the summary judgment hearing.

The real property at issue in this case is located in Bonner County. Prior to the events relevant to this appeal, Pandrea and Clark jointly owned lands referred to herein as Parcels A, B, and C. In 1992, Pandrea and Clark quitclaim deeded Parcel A—real property lying southeast of Tavern Creek—to Pandrea and her then-husband Robert Lee Wiltse, Sr. This deed, recorded as Instrument No. 416381, has been referred to as the "1992 Quitclaim Deed." The face of the deed

2

expressly reserved an easement: "Subject to and reserving a 30.0 foot easement for a road right of way and utilities." The easement was described in the deed by metes and bounds, and burdened a portion of Parcel A. Mr. Thornton admits that Pandrea and Clark owned this land, as well as the adjoining Parcel B and Parcel C to the northwest, as tenants in common at the time of the 1992 conveyance.

Mr. Thornton rented Parcel A from Pandrea and Wiltse from 1993 to 1998. In 1998, Wiltse conveyed Parcel A to Mr. Thornton by a warranty deed recorded as Bonner County Instrument No. 525386.[1] This has been referred to as the "1998 Warranty Deed." The deed included the following language:

EASEMENT AND CONDITIONS THEREOF RESERVED BY INSTRUMENT:
IN FAVOR OF:        MARY E. PANDREA WILTSE, A MARRIED WOMAN DEALING IN HER SOLE AND SEPARATE PROPERTY; AND KARI A. CLARK, A SINGLE WOMAN
FOR:        A 30.0 FOOT EASEMENT FOR A ROAD RIGHT OF WAY AND UTILITIES

RECORDED:        DECEMBER 1, 1992
INSTRUMENT NO.:        416381

Thus, the easement documented in the deed to Mr. Thornton describes by reference the same easement reserved by Pandrea and Clark in the 1992 Quitclaim Deed to Pandrea and Wiltse. Mr. Thornton refers to the part of Parcel A on which the easement sits as the "Shoreline Piece."

When the easement was reserved in 1992, Pandrea and Clark jointly owned two other relevant pieces of property: an approximately five-acre parcel adjoining the Shoreline Piece (Parcel B), and an approximately fifteen-acre parcel north of the five-acre parcel that did not adjoin the Shoreline Piece (Parcel C).[2] Mr. Thornton alleges, apparently without dispute, that before Pandrea and Clark became tenants in common as to each parcel, Parcel B was Pandrea's sole and separate property and Parcel C was Clark's sole and separate property.

Pandrea and Clark no longer own Parcels B and C jointly as tenants in common. In a separate matter litigated in 2014, Parcels B and C were judicially partitioned between Pandrea and Clark. A survey conducted in conjunction with that matter had determined that the land at

---

[1] Pandrea and Wiltse divorced in 1996. The record does not disclose a conveyance transferring Pandrea's interest in the parcel to Wiltse or Mr. Thornton. However, no party has disputed the validity or legal effect of Wiltse's conveyance to Mr. Thornton.

[2] Mr. Thornton also refers to Parcel B as "Tax Lot 40" and the Barretts refer to it as "Parcel I." Mr. Thornton also refers to Parcel C as "Tax Lot 49" and the Barretts refer to it as "Parcel II."

3

issue comprised over twenty-three acres rather than twenty acres. The judgment awarded Pandrea 12.739 acres in the southeast portion of the whole ("Pandrea's New Parcel") and Clark 10.423 acres in the northwest portion ("Clark's New Parcel"). Pandrea's New Parcel includes all of the original Parcel B and part of the original Parcel C. Clark's New Parcel includes the remaining portion of the original Parcel C, and does not adjoin the Shoreline Piece. The outer borders of Pandrea's New Parcel plus Clark's New Parcel are coextensive with the outer borders of the original Parcel B plus the original Parcel C. The judgment partitioning the parcels described an easement appurtenant benefiting Clark's New Parcel over Pandrea's New Parcel. This easement apparently has its point of beginning where Mr. Thornton's Shoreline Piece meets the boundary of Parcel B, the original five-acre parcel. A copy of the partition judgment was in evidence before the district court in this case.[3]

Clark claims that Mr. Thornton wrongfully interfered with her easement rights by erecting a locked gate across the road. She also claims that he posted a sign stating "NOTICE KARI CLARK is prohibited from entering upon this property for any reason under penalty of criminal trespass. I.C. 18-7011. John F. Thornton, 4685 Upper Pack River Road, Sandpoint, Idaho 83864, Owner." According to Clark, in July 2013 she and her family attempted to access her parcel through the easement road on Mr. Thornton's property in order to scatter the ashes of her deceased son following a memorial service. She asserts that Mr. Thornton stopped them and refused to let anyone pass the gate unless they agreed to sign a document purporting to grant Clark limited access to use the easement. Mr. Thornton argued that he "has a right to question those who claim to have the right to cross his property, and it is not unreasonable to ask for identification and verification of such claims."

## B. Procedural Background

In August of 2013, Mr. Thornton sued Pandrea and Clark to quiet title and for damages with respect to the Shoreline Piece and the "Well Piece," a small piece of land between Tavern Creek and the northwest boundary of Parcel A. Notably, Mr. Thornton's complaint included as exhibits re-typed "property descriptions" describing the metes and bounds of Parcel A, including the Shoreline Piece—but these exhibits were not certified documents and did not acknowledge the easement referenced in the deed from which the property descriptions must have been

---

[3] The judgment in the partition action was affirmed by this Court in *Pandrea v. Barrett*, 160 Idaho 165, 369 P.3d 943 (2016).

4

copied. Title to the Well Piece is not at issue in this appeal and it will not be further discussed except as relevant to this appeal. Both defendants filed answers. Clark also counterclaimed, seeking to quiet title to the easement over the Shoreline Piece and to recover damages for Mr. Thornton's alleged interference with her easement rights.

On January 30, 2014, Clark moved for summary judgment, seeking dismissal of Mr. Thornton's complaint against her and seeking entry of judgment on her counterclaims against Mr. Thornton. Clark's motion was accompanied by a supporting memorandum and by sworn affidavits from Clark's counsel, Joel P. Hazel, and Clark's niece, Terri Boyd-Davis. Hazel's affidavit included three relevant exhibits. Exhibit A is a certified copy of the 1992 Quitclaim Deed. Exhibit B is a certified copy of the 1998 Warranty Deed. Exhibit C is a copy of the Revised Judgment and Decree of Partition that divided Parcel B and Parcel C between Pandrea and Clark into Pandrea's New Parcel and Clark's New Parcel.

Mr. Thornton objected to Clark's motion for summary judgment. With his objection he also filed an affidavit he had sworn, as well as a memorandum of law. In addition, Mr. Thornton moved to dismiss or to continue the hearing on Clark's motion for summary judgment and sought sanctions. He alleged that Clark's motion and supporting filings pled matters outside of the scope of her answer and counterclaim and alleged facts omitted from her response to discovery. He further alleged that the affidavits of Boyd-Davis and Hazel were submitted in bad faith.

The district court held oral argument on Clark's motion for summary judgment on March 14, 2014. The court granted Clark's motion at the conclusion of the hearing, while also indicating it would issue a written decision. The court issued that decision on April 9, 2014. In addition to ruling on the motion for summary judgment, the court's order documented a concern it had raised at the hearing that Mr. Thornton's wife and attorney Ms. Thornton would violate the Idaho Rules of Professional Conduct by acting as an advocate at trial where she was likely to be a witness. The court noted it had sent Ms. Thornton a letter after the hearing indicating that the court would report her to the Idaho State Bar unless there were a timely substitution of counsel. Ms. Thornton did not withdraw, but instead stated to the court that bar counsel had indicated that she could continue representing Mr. Thornton during the pre-trial process.

In ruling on summary judgment, the court made two legal conclusions relevant to this appeal. First, the court concluded that there is no genuine issue of material fact that Clark had a

right to use the easement on the Shoreline Piece. Second, the court concluded that Mr. Thornton had interfered with Clark's right to use the easement.

The district court rejected the argument made by both Pandrea and Mr. Thornton that the easement at issue benefits only Parcel B, which they referred to as Tax Lot 40. The court noted that no admissible evidence depicted Tax Lot 40 or described it by a metes and bounds description. The district court concluded that by its plain language, the easement was created to benefit the lands of Pandrea and Clark, which at the time of creation included both Parcels B and C. The district court further concluded that no language in the easement limited it to Parcel B or to "Tax Lot 40." Therefore, the present ownership of Parcel B is irrelevant because the easement was intended to benefit both Parcel B and Parcel C. The court also rejected Mr. Thornton's argument that a property benefited by an easement appurtenant must be adjacent to the property burdened. The court noted that Mr. Thornton offered no legal authority to support that proposition, and indeed that no such authority exists. After rejecting these arguments, the district court concluded that the 1992 Quitclaim Deed reserved an easement appurtenant on the Shoreline Piece for the benefit of Parcels B and C, and therefore, Clark had a right to use the easement because she was an owner of part of the dominant estate at all relevant times.

Next, the court considered Clark's counterclaim that Mr. Thornton wrongfully interfered with her easement rights by erecting a locked gate across the road. First, the court rejected Mr. Thornton's claim he was unaware of Clark's easement rights, charging Mr. Thornton with record notice of the easement based on Wiltse's deed to Mr. Thornton that expressly named Clark as an easement holder. Further, the court concluded that the recorded 1992 deed reserving the easement also put Mr. Thornton on constructive notice of Clark's easement rights. The district court found that "Thornton erected a locked gate across the easement road and posted a sign dated July 5, 2013, next to the gates, which read . . . 'NOTICE KARI CLARK IS PROHIBITED FROM ENTERING UPON THIS PROPERTY.'" Further, the court criticized Mr. Thornton for failing to present a certified copy of either of the deeds acknowledging the easement, and it disagreed with Ms. Thornton's contention that locking the gate and opposing Clark's counterclaims were not frivolous.

Ultimately, the district court concluded that Clark met her burden on summary judgment by showing that she had a right to use the easement over the Shoreline Piece and that Mr. Thornton impermissibly interfered with that right. The court also concluded that Mr. Thornton

failed to state a lawful basis for preventing Clark from exercising her rights under the easement. In its order, the court granted summary judgment in favor of Clark as to Mr. Thornton's claims and granted partial summary judgment in favor of Clark as to Clark's counterclaims, except for the issue of damages, which was to be litigated at trial. However, based on a stipulation by Clark and Mr. Thornton, the district court dismissed the damages claim, leaving nothing to be tried.

On May 1, 2014, the court entered judgment consistent with its summary judgment order. Mr. Thornton moved for reconsideration, which the court denied. In its order, the court addressed several arguments Mr. Thornton made. First, the court rejected Mr. Thornton's challenge to the court's reliance on an affidavit filed by Joel P. Hazel, Clark's counsel. Although Mr. Thornton had challenged Hazel's personal knowledge and the truthfulness of his sworn statements, the court noted that in its summary judgment order it relied on certified documents attached to Hazel's affidavit rather than Hazel's testimony within the affidavit.

Next, the court addressed Mr. Thornton's contention that the court had erred by relying on Clark's pleadings and affidavits for the proposition that the two parcels comprise one big twenty-acre parcel of land. The court noted that "Thornton's argument completely ignores the fact that District Judge John P. Luster . . . found that Clark and Pandrea owned twenty acres of land as tenants in common." Mr. Thornton appeared to believe, mistakenly, that whether the dominant estate was comprised of one parcel or two parcels was relevant.

The court also rejected as irrelevant Mr. Thornton's argument that Clark had adequate access to her land via a road other than the easement. The court observed that access via another means is entirely irrelevant to the question of whether Clark has an express easement over Mr. Thornton's land.

Next, the court again rejected Mr. Thornton's assertion that a dominant estate benefited by an easement appurtenant must be adjacent to the servient estate. The court reiterated that Clark's easement depends on the fact that her name is on a recorded easement that burdens Thornton's land.

Finally, the court rejected Mr. Thornton's argument that Clark no longer owns the dominant estate as lacking a factual basis. The court regarded the dominant estate as "the property held as tenants in common (until earlier this year) by Pandrea and Clark" at the time the easement was created. The court perceived that the partition action that divvied up the jointly-

7

held land into separate parcels had no impact on the easement over Mr. Thornton's property because "Pandrea and Clark still own the dominant estate."

The district court addressed additional matters in its order on reconsideration. Clark had objected to Mr. Thornton's affidavit, requesting that the court strike it. The court refused:

> While Thornton's affidavit provides no relevant evidence to rebut the express easement of record Clark has across Thornton's land, Thornton's affidavit is relevant to show the absurd lengths he is willing to travel to try and trump Clark's easement. Drawing twelve maps with colored pencils in an attempt to show what happened at various times in history, does nothing to change the fact that Clark has a written express easement across Thornton's land.
>
> . . . . Throughout summary judgment, Thornton refused to discuss that easement[;] instead he chose to make irrelevant arguments to the Court. Now, Thornton supplies the Court with additional documents that do nothing to dispute the language of [the deeds]. The hand-illustrated maps made by John Thornton alleging to depict the properties and easements involved in this case are of no relevance. Clark shifted the burden to Thornton to show that there is a genuine issue of material fact and Thornton has failed to meet his burden via admissible and relevant evidence.

Clark timely moved for attorney fees and costs and Mr. Thornton timely objected. The district court granted Clark's request for attorney fees and costs in the amount of $41,530.17. The award was granted against Mr. Thornton based on a conclusion that the case was brought frivolously under Idaho Code section 12-121, and it was granted jointly and severally against Mr. Thornton and Ms. Thornton as a Rule 11 sanction. The Rule 11 sanction was based on the failure to produce a copy of the deed earlier in the litigation. The court reasoned that Mr. Thornton and Ms. Thornton were not candid with the court and that had they produced the deed, instead of waiting on Clark to produce it, the case would have been resolved much sooner.

Mr. Thornton timely appealed. While the appeal was pending, the Barretts filed a Notice of Substitution with the Court, indicating that Clark had transferred to the Barretts both the title to her real property that is the subject of this appeal and her interest in the instant cause of action. Clark also filed a motion before the Supreme Court to temporarily remand the case to the district court to rule on the motion to substitute parties. Mr. Thornton objected and moved to strike and disallow the substitution. The substitution was approved both by the district court and by this Court.

Additionally, Ms. Thornton petitioned to intervene in the appeal for the purpose of challenging the Rule 11 sanctions imposed against her. Over the Barretts' opposition, the Court granted the petition. Pandrea also filed a pro se brief as a respondent on appeal.

Finally, Mr. Thornton moved the district court for a stay pending appeal and waiver of supersedeas bond, relying on Idaho Appellate Rule 13(b)(14). The Barretts opposed the motion and sought Rule 11 sanctions against Mr. Thornton and Ms. Thornton on the grounds that I.A.R. 13(b)(14) does not allow a stay on a money judgment such as the award of attorney fees at summary judgment. The district court denied Mr. Thornton's motion and granted the Barretts' motion for sanctions.

## II.
## ISSUES PRESENTED ON APPEAL

### A. Mr. Thornton's Issues on Appeal

1. Whether the district court abused its discretion by determining factual issues on summary judgment where the matter was set for jury trial.

2. Whether the district court erred by interpreting the 1998 Warranty Deed as giving notice of an easement in favor of Clark, as a matter of law, regardless of whether she still owned the dominant estate.

3. Whether the district court abused its discretion by refusing to hear Mr. Thornton's motion for sanctions and continue the hearing on summary judgment.

4. Whether the district court erred in refusing to determine the dimensions of the easement or the burden on the servient estate.

5. Whether it was clearly erroneous for the district court to find that Mr. Thornton knowingly and intentionally interfered with Clark's easement.

6. Whether the district court abused its discretion by awarding attorney fees to Clark under Idaho Code section 12-121.

7. Whether the district court abused its discretion by imposing Rule 11 sanctions against Mr. Thornton prior to the appeal.

8. Whether the district court erred in substituting the Barretts for Clark as parties in interest.

9. Whether the district court abused its discretion in imposing Rule 11 sanctions against Mr. Thornton for his motion for a stay pending appeal and waiver of supersedeas bond.

10. Whether Mr. Thornton is entitled to attorney fees under Idaho Code section 12-121 on appeal.

11. Whether the Court should impose Rule 11 sanctions against the Barretts on appeal.

### B. Intervenor Ms. Thornton's Issues on Appeal

1. Whether the district court abused its discretion by imposing Rule 11 sanctions against Ms. Thornton prior to the appeal.

2. Whether the district court abused its discretion by imposing Rule 11 sanctions against Ms. Thornton for Mr. Thornton's motion for a stay pending appeal and waiver of supersedeas bond.

3. Whether the Court should impose Rule 11 sanctions against the Barretts on appeal.

## C. Pro se respondent Pandrea's Issues on Appeal

1. Whether Clark had standing to request declaratory relief.

2. Whether the district court erred by issuing judgments precluded by the judgment in the prior partition action.

## D. Respondent Barretts' Issue on Appeal

1. Whether the Barretts are entitled to attorney fees on appeal.

## III.
## STANDARD OF REVIEW

The issues raised on appeal have a variety of standards of review. Accordingly, the applicable standard of review is discussed within the analysis for each issue.

## IV.
## ANALYSIS

## A. Mr. Thornton's Issues on Appeal

### 1. The district court did not make findings on disputed issues of material fact.

Mr. Thornton frames the first issue on appeal as whether the district court abused its discretion by making factual findings on summary judgment. However, his subsequent argument fails to apply or even recite the abuse of discretion standard. Instead, Mr. Thornton appears to challenge the sufficiency of the evidence on which the district court relied in granting partial summary judgment to Clark, by repeatedly referring to "substantial evidence."

Neither standard Mr. Thornton advances is relevant. "This Court reviews an appeal from an order of summary judgment *de novo*, and this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment." *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 394, 224 P.3d 458, 461 (2008). "Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* "When ruling on a motion for summary judgment, disputed facts are construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are drawn in favor of the non-moving party." *Id.* "If the evidence presented shows no disputed issues of material fact, then all that remains are questions of law, over which this Court exercises free review." *State ex rel. Wasden v. Maybee*, 148 Idaho 520, 527, 224 P.3d 1109, 1116 (2010).

Mr. Thornton challenges five findings the district court made on summary judgment: (1) that Clark and Pandrea together owned a single parcel comprising over twenty acres; (2) that the size of the parcel Wiltse and Pandrea obtained from Clark and Pandrea by Bonner County Quit-Claim Deed, Instrument No. 416381, in 1992 is two acres; (3) that the easement benefited the entire twenty-plus acres including Parcel C, rather than just Parcel B; (4) that since the 1940s the road on the easement is the only road Clark's family has used to access Parcels B and C; and (5) that Pandrea and Clark are sisters who still own land bordering on Mr. Thornton's land.

Mr. Thornton generally does not make clear how he thinks these particular findings are material. He appears to suggest that the 1992 easement benefits only Parcel B because the servient estate on which it lies was severed from Parcel B. He made the same argument at the summary judgment hearing, asserting that "th[e] dominant parcel has to be limited to the parcel that was in unity of title with land easements on it." Mr. Thornton cites no authority for this proposition. Nor does he acknowledge the fact that Pandrea and Clark were tenants in common as to both Parcel B and Parcel C at the time of the 1992 conveyance reserving the easement. The easement reservation in the 1992 Quitclaim Deed does not expressly describe the dominant estate, by metes and bounds or otherwise. Mr. Thornton centers his argument around the idea that whether Parcel B and Parcel C remained separate and distinct parcels or were instead treated as a single, unified parcel is material. He also appears to take issue with the district court's description of the Shoreline Piece as a "two-acre parcel of land" because the deed conveying it "does not contain any statement as to the acreage conveyed." Mr. Thornton argues that the Shoreline Piece is half of an acre in size instead of two acres, but he fails to articulate the legal significance, if any, of the district court's alleged misstatement of its size.

In *Christensen v. City of Pocatello*, the Court adopted the rule that "[u]nless the terms of the servitude . . . provide otherwise, an appurtenant easement . . . may not be used for the benefit of property other than the dominant estate." 142 Idaho 132, 136, 124 P.3d 1008, 1012 (2005) (quoting Restatement (Third) of Property: Servitudes § 4.11). Comment b to § 4.11 reads in part:

> If the easement or profit is appurtenant, the identity of the dominant estate must then be determined. Ordinarily the identity of the benefited property is obvious from the circumstances, but questions may arise . . . . Under the rule stated in § 2.5, a servitude can be created to benefit any land . . . [;] the usual presumption, embodied in the rule stated in this section, is that the dominant estate is limited to land owned by the grantee at the time the easement or profit is created.

Restatement (Third) of Property: Servitudes § 4.11, cmt. b.

11

It appears that the district court applied this reasoning to conclude that both Parcel B and Parcel C were dominant estates relative to the servient estate at issue. When the easement was reserved in the 1992 Quitclaim Deed, Clark and Pandrea jointly owned both Parcel B and Parcel C as tenants in common. The easement language in Mr. Thornton's 1998 Warranty Deed specified that the easement was "In favor of: Mary E. Pandrea . . . and Kari A. Clark." Although it did not do so expressly, the district court apparently agreed with the arguments put forth by Clark at the summary judgment hearing. Clark laid out the material facts as follows: (1) In 1992, co-owners Clark and Pandrea quitclaimed the Shoreline Piece to Pandrea and Wiltse, reserving the easement at issue; (2) In 1998, Wiltse conveyed the Shoreline Piece to Mr. Thornton via a warranty deed that acknowledged the 1992 deed and easement; (3) In 2013 Mr. Thornton installed a gate preventing Clark from accessing the easement; and (4) In 2014 the remaining real property jointly owned by Clark and Pandrea was judicially partitioned, with Clark retaining an easement over the land granted to Pandrea.

Following *Christensen* and the relevant portion of the Restatement (Third) of Property: Servitudes, the district court's conclusion was correct. The material facts are those laid out by Clark at summary judgment, and nothing in Mr. Thornton's briefing raises a genuine dispute as to any of those facts.

First, Mr. Thornton's argument that Clark and Pandrea owned two parcels instead of one has no impact on the scope of a reserved express easement because a servient estate can benefit more than one dominant estate. *See Hodgins v. Sales*, 139 Idaho 225, 229, 76 P.3d 969, 973 (2003) (acknowledging that some easements can be "best described as a shared, private right of way.").

Second, Mr. Thornton's argument disputing the size of the parcel conveyed to Wiltse and Pandrea by Clark and Pandrea in 1992 is irrelevant. The size of the parcel on which the servient estate is sited is not a material fact in this case. Mr. Thornton admits that the "1992 Quitclaim Deed, Instrument No. 416381, . . . conveyed . . . the Shoreline Piece."

Third, Mr. Thornton's argument that the easement could only benefit Parcel B is simply not true. Mr. Thornton asserts that "Clark's Parcel C was separate and distinct from Parcel B, and the conveyance of a part of parcel C could not create a right to an easement on any land other than the portion of parcel C thus conveyed." This assertion is conclusory and nonsensical. By simple logic, an easement reserved in a conveyance will always create a right on land other

than the land conveyed. The conveyed land is burdened with the duty to benefit some other land. Mr. Thornton cites no authority for the proposition that the benefited land must be a portion of the parcel from which the burdened land is conveyed. Nor does Mr. Thornton raise any serious challenge to the district court's conclusion that both Parcel B and Parcel C were dominant estates with an appurtenant right to the benefit of the easement over the Shoreline Piece. There is simply no evidence in the record to support the contention that the easement was not intended to benefit both Parcels A and B, which were then jointly owned by Clark and Pandrea. The deed contains no such language. Nor is there evidence that the parcels were divided by a fence or otherwise treated separately on the ground.

Fourth, Mr. Thornton's argument that "[e]xcellent access to Kari Clark's parcels exists via a well-built logging road" is irrelevant because it has no bearing on whether Parcel C is benefited by an express appurtenant easement over the Shoreline Piece. The district court rejected this argument on reconsideration, distinguishing the express easement of record here from easements by necessity, where the quality of another route by which to access property is relevant. Although Mr. Thornton's evidence does dispute a fact alleged by Clark's affiant Teri Boyd-Davis about the extent to which Clark used the easement at issue, that fact is not material in this case. The district court's analysis was correct. Whether Clark could access her land via an alternate route and the extent to which Clark has historically used the Shoreline Piece to access her land are immaterial where there is an express easement rather than an easement by necessity.

Fifth and finally, Mr. Thornton argues that the district court found that "Pandrea and Clark are sisters who still own land bordering Thornton's land." Mr. Thornton is apparently correct that after the judicial partition action, Clark no longer owns any land adjacent to Mr. Thornton's land because Pandrea's New Parcel includes all of the relevant land bordering Mr. Thornton's land. However, the present ownership of the land adjacent to Mr. Thornton is not a material fact in this case. Mr. Thornton has failed to raise a genuine dispute of material fact as to whether Clark's New Parcel is a dominant estate with respect to the Shoreline Piece. Accordingly, this argument is irrelevant.[4]

---

[4] Mr. Thornton also asserts that he has raised "highly disputed facts for the jury to determine" as to the "boundaries and dimension of the dominant parcel, and the persons thus entitled to use the easement." Mr. Thornton and Clark each seek equitable relief in their respective quiet title actions. Because the parties sought equitable rather than legal relief with respect to the quiet title actions, there is no right to a trial by jury and the district court would have sat as

13

Further, Mr. Thornton's argument on this issue is internally inconsistent. He suggests that it was an abuse of discretion for the district court to determine factual issues on summary judgment where the matter is set for jury trial. But he also asserts that the court should have entered judgment in Thornton's favor, without articulating how this would be proper or possible in light of his assignment of error.

Because Mr. Thornton failed to raise any genuine dispute of material fact, we affirm the district court's grant of partial summary judgment to Clark.

## 2. The district court did not err in interpreting Mr. Thornton's 1998 Warranty Deed as giving notice of an easement in favor of Clark.

Mr. Thornton argues that the district court erred by holding as a matter of law that the 1998 Warranty Deed put him on notice of Clark's easement. He suggests that the fact a deed names the owner of the dominant estate of an easement appurtenant does not necessarily mean that the named owner continues to own the dominant estate and have rights to the easement at some future point. Indeed, as Mr. Thornton points out, after Clark conveyed her interest in Clark's New Parcel to the Barretts, her right to use the easement terminated even though his deed nonetheless continues to reference her as an easement holder of record. From there, Mr. Thornton continues to try to argue that the easement reserved in the 1992 Quitclaim Deed benefited only Parcel B and not Parcel C. This argument is not supported by reason or authority and does nothing to call into question the district court's contrary conclusion that the easement benefits both parcels.

Mr. Thornton fails to articulate the legal significance of the error he alleges. He also fails to articulate an applicable standard of review. Because he appears to be challenging the district court's legal conclusion that his deed put him on notice of Clark's easement, we will review the conclusion *de novo*. *Maybee*, 148 Idaho at 527, 224 P.3d at 1116. Applying this standard, we conclude the district court did not err.

Mr. Thornton's reasoning is correct to the extent that he asserts that a prior deed naming the owner of a dominant estate does not mean that at some later point the same person necessarily retains ownership of the dominant estate. However, and obviously, it is also not necessarily true that the same person no longer retains ownership. At best, the 1998 Warranty

---

the finder of fact at trial on this issue. *Morgan v. New Sweden Irrigation Dist.*, 160 Idaho 47, 51–52, 368 P.3d 990, 994–995 (2016).

14

Deed naming Clark as owner is evidence tending to suggest, absent evidence to the contrary, that she retained ownership during the relevant periods. Regardless, the deed naming Clark sufficed to put Thornton on notice that *at some point* Clark had an easement across his property. Based on that notice, Thornton was subject to a duty to investigate whether Clark continued to possess an easement over his land before excluding her from it. *See Tiller White, LLC v. Canyon Outdoor Media, LLC*, 160 Idaho 417, 419, 374 P.3d 580, 582 (2016) (requiring the purchaser of real property to conduct a reasonable investigation of the property to discover any encumbrances). It was not error for the district court to interpret the 1998 Warranty Deed as putting Mr. Thornton on notice that Clark possessed an easement appurtenant over the Shoreline Piece.

3. **The district court did not abuse its discretion by refusing to hear Mr. Thornton's motion for sanctions or to continue the hearing on summary judgment.**

Mr. Thornton argues that the district court abused its discretion by stating in its scheduling order that "no party may add additional hearings to that time set for hearing without obtaining the prior approval of the Court's Clerk." Mr. Thornton alleges several examples where he was unable to obtain a response from the court clerk and therefore did not get a hearing, while Clark was apparently granted hearings even on very short notice. Mr. Thornton neither recites nor applies the standard applicable to reviewing an alleged abuse of discretion. Further, Mr. Thornton asserts without supporting reasoning or authority that "[i]t is a denial of due process to precondition the court's time upon the approval of the court clerk, and then to enforce its provisions arbitrarily."

The Court "will not consider an issue not supported by argument and authority in the opening brief." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (internal quotation marks omitted). Because Mr. Thornton failed to articulate or apply the abuse of discretion standard, and because he failed to support his allegation of a due process violation with argument or authority, we conclude Mr. Thornton has not shown an abuse of discretion.

4. **The district court did not err in refusing to determine the dimensions of the easement or the burden on the servient estate.**

Mr. Thornton challenges the district court's adoption of Clark's description of the easement dimensions, arguing that the description is inconsistent with the actual driveway in use: "[Clark's] description describes the Easement as thirty feet wide and following along the thread of Pack River. The driveway curves into the hill, and is only ten to twelve feet wide." Mr. Thornton argues that the district court should have held a hearing to determine where the

15

easement is actually located and issued a judgment precisely describing the actual course, width, and location of the existing easement. The district court's Second Amended Final Judgment specifies the metes and bounds of the easement.

Mr. Thornton frames this issue as an abuse of discretion in the table of contents of his opening brief but more generally frames it as just "error" in the "Argument and Authority" section of his brief. Once more, Mr. Thornton fails to articulate or apply the correct legal standard—or any legal standard at all—and we could deny relief on this issue for that reason. *Bach*, 148 Idaho at 790, 229 P.3d at 1152. In fact, Mr. Thornton does not even make clear in his briefing what exactly he is appealing. He cites a portion of the transcript from the hearing on Clark's motion for fees and costs, in which the district court adopted a judgment drafted by Clark and based on a survey prepared in the Partition Action. He challenges the district court's failure to hold an evidentiary hearing on the easement's dimensions, maintenance obligations, and burden on the servient estate, but nowhere in his briefing does he demonstrate that he sought such a hearing at the district court. Accordingly, we decline to address this issue under the proposition that this Court will not consider issues raised for the first time on appeal. *Parsons v. Mutual of Enumclaw Ins. Co.*, 143 Idaho 743, 746, 152 P.3d 614, 617 (2007).

### 5. It was not clearly erroneous for the district court to find that Mr. Thornton knowingly and intentionally interfered with Clark's easement.

The district court concluded that Mr. Thornton interfered with Clark's right to use the easement when he erected a locked gate across the easement. On appeal, Mr. Thornton argues that it was clearly erroneous for the district court to find that Thornton knowingly and intentionally interfered with Clark's easement. Once again, Mr. Thornton fails to articulate or apply an appropriate legal standard to this issue. Rather than providing a legal analysis challenging the district court's conclusion on summary judgment, Mr. Thornton instead asserts without any legal foundation that "it is Clark, not Thornton, who is at fault." He seems to argue that when he interfered with Clark's use of the easement in 2013, he believed she had no right to use the easement and so his interference could not have been intentional or willful.

This argument cannot be reconciled with the district court's findings that Mr. Thornton was on notice of Clark's interest in the easement via the 1992 and 1998 deeds and that he had no reason to believe that her interest had been transferred or extinguished. Regardless of whether Mr. Thornton genuinely believed that he was entitled to exclude Clark from the easement, he had constructive notice of her right. Therefore, his intentional act of erecting the locked gate was

16

unlawful because it interfered with that right. It was not error—clear or otherwise—for the district court to so hold.

**6. The district court did not abuse its discretion by awarding attorney fees to Clark under Idaho Code section 12-121.**

On the record at a hearing on Clark's motion for attorney fees and costs, the district court awarded Clark fees and costs under Idaho Code section 12-121, based on a conclusion that Mr. Thornton brought the case frivolously. Mr. Thornton appeals the district court's conclusions that Clark was the prevailing party, that Mr. Thornton's conduct was frivolous, and that the $41,530.17 awarded was a reasonable amount.

First, Mr. Thornton accurately points out that Idaho Rule of Civil Procedure 54(e)(2) requires the district court to "make a written finding . . . as to the basis and reasons for awarding such attorney fees" under section 12-121. The district court did provide its basis and reasons for awarding fees under section 12-121 at the hearing, but apparently did not otherwise make a written finding. Mr. Thornton appears to suggest this is insufficient to satisfy Rule 54(e)(2). The district court made the following statements on the record:

> [U]nder 12-121 . . . this case was brought frivolously . . . .
>
> . . . . Thornton's decision not to produce a copy of the very deed that this case turns around is . . . part of the reason why attorney's fees continued to accrue . . . .
>
> The arguments . . . are frivolous. . . . nothing about arguing them time after time after time again . . . changed that fact. This is a written easement. It is recorded. It is appurtenant.
>
> . . . . the fact that Thornton would even bring this case in light of an express recorded easement that wasn't vague, that gave Clark all the right to cross this property . . . it's outrageous, it's egregious, it is preposterous. It's just absurd.
>
> . . . . You can't put a gate up when you don't have the right to keep that other person out, and—and that wrong has always been present ever since this case was filed, and Thornton, I am convinced, had he ever read his deed, knew that.

The Barretts contend that the purpose of written findings is "to afford the appellate court a clear understanding of the district court's decision, so that it may be determined whether the district court applied the proper law to the appropriate facts in reaching its conclusion." *Snipes v. Schalo*, 130 Idaho 890, 893, 950 P.2d 262, 265 (Ct. App. 1997). The Barretts argue that the hearing transcript is a written document in the record on appeal that satisfies the purpose of the rule because the district court stated at the hearing that it was articulating its reasons for granting the award on the record. The hearing transcript does afford a written record of the district court's

findings that is sufficient to permit review of the basis and reasons for awarding fees. The Barretts urge the Court to regard the written transcript as a "written finding" sufficient to satisfy Rule 54(e)(2).

Idaho case law has not precisely addressed whether a hearing transcript may suffice as a "written finding" for purposes of Rule 54(e)(2). Nor does it appear that Idaho case law has addressed the broader question of whether a hearing transcript may suffice as a "written finding" in any other contexts. However, we need not to decide that issue. Presuming the district court erred in failing to make a "written finding" pursuant to Rule 54(e)(2), Mr. Thornton has failed to show that this error affected his substantial rights. I.R.C.P. 61. Therefore, we decline to reverse the award of attorney fees under Rule 54(e)(2) for lack of written findings.

Next, Mr. Thornton contends that the district court erred by concluding that Clark was the prevailing party. Mr. Thornton argues that Clark did not prevail on the issue of damages or on the issue of quieting title to the Well Piece. He also observes that Clark raised several affirmative defenses and counterclaimed on several theories. Mr. Thornton concludes, without citing authority, that "[s]ince Clark chose to present multiple alternate theories and claims for recovery, she cannot be said to have prevailed on all her claims and should not be awarded fees for time litigating unsubstantiated claims." In conclusory fashion, Mr. Thornton asserts without support that "the majority of Clark's claims were not substantiated by the evidence."

"The district court's determination of prevailing party status for the purpose of awarding attorney fees and costs is within the court's sound discretion, and will not be disturbed on appeal unless there is an abuse of discretion." *Hobson Fabricating Corp. v. SE/Z Const., LLC*, 154 Idaho 45, 49, 294 P.3d 171, 175 (2012). Rule 54(d)(1)(B) of the Idaho Rules of Civil Procedure guides the prevailing party analysis: "In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties." The Court stated in *Hobson* that "the issue . . . is not who succeeded on more individual claims, but rather who succeeded on the main issue of the action." 154 Idaho at 49, 294 P.3d at 175.

Here, the district court granted summary judgment in favor of Clark as against Thornton's claims, and granted partial summary judgment in favor of Clark as against Thornton on all of Clark's counterclaims, except for the issue of damages. Although Mr. Thornton asserts that the district court abused its discretion in determining that Clark was the prevailing party, Mr.

Thornton has failed to articulate an argument based on reasoning or authority to support this assertion. The main issue in this litigation was whether Clark was entitled to use an easement over Mr. Thornton's property. Clark defended against Mr. Thornton's claim and prevailed on the liability aspect of her counterclaim. As to Clark, Mr. Thornton lost both his own claim and the liability aspect of Clark's counterclaim. There is no reason on this record to conclude that the district court erred in determining that Clark was the prevailing party. We affirm the district court's conclusion that Clark prevailed.

Next, Mr. Thornton disputes the district court's conclusion that he brought his case or defended against Clark's counterclaim frivolously, unreasonably, or without foundation. He yet again argues that because there were three separate parcels instead of two, the easement of record in Clark's name could not have benefited Parcel C. He insists that his arguments at the district court were not frivolous because he was merely trying to get the court to understand and apply this proposition.

"The district court's determination as to whether an action was brought or defended frivolously will not be disturbed absent an abuse of discretion." *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 629, 329 P.3d 1072, 1077 (2014). Here, the district court expressly concluded that this case was brought frivolously. It subsequently discussed the reasons it reached that conclusion. Again, Mr. Thornton's argument on appeal fails to offer reasoning or authority supporting his argument that the district court abused its discretion in concluding that he brought his case and defended Clark's counterclaim frivolously. Accordingly, we affirm the district court's conclusion that Mr. Thornton's actions were frivolous.

Finally, Mr. Thornton asserts that the district court abused its discretion by awarding attorney fees that were unreasonable, unrelated to the issues before the court, and unrelated to the litigation. Specifically, Mr. Thornton alleges that the award included fees for time spent on an unrelated criminal matter, on the separate Partition Action, and on defending against Pandrea's pleadings in this case. Although these allegations include citations to attorneys' time entries in the record, it is not at all clear from the record that the allegations are true. Regardless, Mr. Thornton's conclusory allegations fall far short of showing that the district court abused its discretion in determining the amount of attorney fees for which Mr. Thornton is liable. Accordingly, we affirm the district court's award of attorney fees under Idaho Code section 12-121.

**7. The district court did not abuse its discretion by imposing Rule 11 sanctions against Mr. Thornton prior to the appeal.**

The district court awarded Clark $41,530.17 in attorney's fees and costs as a sanction under I.R.C.P. 11(a)(1), for which Mr. Thornton (as party) and Ms. Thornton (as counsel) were jointly and severally liable. Mr. Thornton appeals the award of sanctions, arguing that he did not fail to make a proper investigation upon reasonable inquiry, that any responsibility for legal errors is attributable to counsel instead of to him, and that the district court abused its discretion in awarding sanctions in the entire amount requested by opposing counsel.

An award of sanctions under I.R.C.P. 11(a)(1) is reviewed for abuse of discretion. *Sun Valley Shopping Ctr., Inc. v. Idaho Power. Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). Rule 11(a)(1) provides, in pertinent part:

> [t]he signature of an attorney or party constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

At the hearing on Clark's motion for attorney fees and costs, the district court stated:

> what is truly amazing in this case is that had Ms. Thornton on behalf of her client, Mr. Thornton, produced a copy of the deed at the summary judgment phase involving Ms. Pandrea, this case would've been over at that time. Ms. Thornton's decision not to produce a copy of the very deed that this case turns around is . . . part of the basis for this Court's awarding Rule 11 sanctions.

This echoed what the district court had previously articulated:

> Thornton attaches as Exhibit [1] to his Complaint . . . a property description. However, that property description is simply printed on a piece of paper and attached to his Complaint; it is not a certified copy of any recorded document. When this Court issued its Memorandum Decision and Order [on Pandrea's Motion for Summary Judgment], the Court had not at that time been provided a copy of Thornton's deed. Two weeks after that decision was issued, when Clark filed the instant motion for summary judgment, was the first time the Court was provided a copy of Thornton's deed.

Exhibit 1 of Mr. Thornton's Complaint is entitled "Thornton Property Description" and apparently includes copies of the metes and bounds descriptions of the Shoreline Piece and other parcels. The first two parcels identified in the Exhibit match the property descriptions in Mr. Thornton's 1998 Warranty Deed exactly save for several minor typos. However, the Exhibit fails to include the language from the deed that documents the easement in favor of Pandrea and Clark. It is apparent that the district court's sanctions against Mr. Thornton and Ms. Thornton were based on their failure to disclose the 1998 Warranty Deed or to provide the court with other timely evidence of the easement.

Once more, Mr. Thornton fails to provide cogent argument or authority supporting his assertion that the district court abused its discretion. Indeed, he again fails even to articulate or apply the abuse of discretion standard. Nonetheless, his individual arguments challenging the award of sanctions will be reviewed in turn.

First, Mr. Thornton argues that he did not fail to make a proper investigation upon reasonable inquiry. The district court did not articulate the precise language in Rule 11 that justified imposing sanctions, so Mr. Thornton's argument against only one possible basis for sanctions is short-sighted. The district court's basis may have been based on a perceived failure to make a proper investigation upon reasonable inquiry, but other bases are also possible. It seems at least as likely that the district court's basis for awarding sanctions was that Mr. Thornton's complaint was not "well grounded in fact" as required by Rule 11(a)(1) because it failed to include the highly-relevant fact that the easement was recorded in the very deed from which Mr. Thornton selectively quoted in Exhibit 1. Alternatively, the district court may have perceived that the complaint was improper because it "cause[d] unnecessary delay or needless increase in the cost of litigation." I.R.C.P. 11(a)(1). The court expressly stated that

> had . . . Thornton produced a copy of the deed . . . this case would've been over at that time. . . . [H]ad Ms. Thornton been candid on behalf of her client and candid to the Court, I think it's quite possible that Ms. Thornton could've avoided the imposition of sanctions under Rule 11, and certainly her and her client could've avoided the quite high attorney's fees that are being assessed.

In light of this, Mr. Thornton has failed to show that the district court abused its discretion in imposing sanctions.

Second, Mr. Thornton argues that any liability for sanctions should be imposed only on his counsel and not on him individually. His brief devotes just two paragraphs to this issue. Those two paragraphs include a conclusory and unsupported assertion that where a party is

represented by counsel any legal errors are solely the responsibility of the attorney, and a citation to a U.S. Supreme Court case holding that F.R.C.P. 11 applies only to the signer of the offending document. *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989).

Mr. Thornton's complaint was verified; both Mr. Thornton (as plaintiff) and Ms. Thornton (as counsel) signed it. The applicable Rule 11 provides in relevant part that "[i]f a pleading, motion or other paper is signed in violation of this rule, the court . . . shall impose upon the person who signed it, a represented party, or both, an appropriate sanction."[5] Mr. Thornton both signed the complaint and was represented by an attorney who signed it. Further, and as described above, it appears that the district court's basis for awarding sanctions was the failure to introduce the deed disclosing the existence of the easement, which is a factual rather than legal issue. Mr. Thornton has offered no reasoning or argument supporting his contention that the sanctions were based on counsel's legal error. Therefore, he has not shown that the district court abused its discretion in awarding sanctions against both Mr. Thornton as a party and Ms. Thornton as counsel.

Third, Mr. Thornton argues that the district court abused its discretion by imposing sanctions in the entire amount requested by Clark. Mr. Thornton's primary argument on this issue is that "the court has provided no rational basis for the amount awarded pursuant to Rule 11." He also offers unsupported allegations that the fees sought and awarded include time spent on unrelated issues or litigation. Rule 11 provides in relevant part that "appropriate sanction[s] . . . may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." The record does not make completely clear how the district court decided the amount of sanctions in this case, although it is likely that the court considered the case to be without a factual basis from the very start. Nonetheless, it was Mr. Thornton's burden to show that the district court abused its discretion in determining the award amount, and Mr. Thornton's cursory and conclusory argument fails to meet that burden. We affirm the district court's order sanctioning Mr. Thornton and Ms. Thornton under I.R.C.P. 11(a)(1).

---

[5] The Idaho Rules of Civil Procedure were amended effective July 1, 2016. The analysis herein would likely be different under the new Rules; Rule 11 no longer appears to authorize sanctions based on a signature by a represented party. The prior version of Rule 11 applies in this proceeding.

## 8. The district court did not err in substituting the Barretts for Clark as parties in interest.

Clark assigned her interest in the dominant estate and in the present cause of action to the Barretts, and counsel moved under I.R.C.P. 25 and I.A.R. 7 to substitute Clark with the Barretts. Both the district court and this Court entered orders substituting the Barretts for Clark. Mr. Thornton opposed the substitution.

Mr. Thornton challenges the district court's order substituting parties, but he does not challenge the parallel order by this Court substituting parties. Mr. Thornton argues that "the facts do not support a motion to substitute parties." He further argues that although Clark assigned her interest in the dominant estate and in the cause of action to the Barretts, the Barretts did not assume Clark's past liability for any damages Thornton may be due on his legal claims on remand.

Idaho Rule of Civil Procedure 25(e) provides that "[s]ubstitution of parties under the provisions of this rule may be made by the trial court either before or after judgment or, pending an appeal, by the Supreme Court." Mr. Thornton's Notice of Appeal was filed June 30, 2014. The Barretts' Motion/Notification of Substitution of Party was filed July 14, 2014. Thus, the case was pending appeal when the substitution was filed. Accordingly, under I.R.C.P. 25(e), this Court was the proper court to order substitution. Because Mr. Thornton failed to appeal this Court's order substituting parties, his appeal of the district court's similar order is irrelevant. Even if the district court's order substituting parties were vacated, this Court's parallel order would stand. Accordingly, we decline to consider whether the district court erred by granting a substitution of parties. Mr. Thornton's arguments on this issue are irrelevant because he failed to appeal the proper order.

## 9. We decline to address whether the district court erred in imposing Rule 11 sanctions against Mr. Thornton for his motion for a stay pending appeal and waiver of supersedeas bond.

While this case was pending appeal, Mr. Thornton moved for a stay of judgment pending appeal and waiver of supersedeas bond. The district court denied the motion and imposed Rule 11 sanctions against Mr. Thornton and Ms. Thornton, finding that the motion was "not well grounded in fact nor . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." However, the record is devoid of any evidence that monetary sanctions were ever actually imposed for the motion. Indeed, the Barretts assert that

23

the district court did not award actual fees because, after they filed their memorandum of costs, Thornton filed an objection and the district court never held a hearing or made an actual award of fees.

Mr. Thornton appeals the imposition of sanctions in the district court's order denying the motion for stay and waiver of supersedeas bond. However, Mr. Thornton does not cite to any order imposing monetary sanctions with respect to the motion. Nor does such an order appear in the record. It would appear that Mr. Thornton's appeal on this issue is either premature, if no sanction order has been entered, or requires reviewing evidence outside the record, if Mr. Thornton merely failed to include any such order in the record. *See* I.A.R. 14(a). In either case, Mr. Thornton cannot prevail on this issue. We decline to rule on Mr. Thornton's assertion that the district court erred by sanctioning him for this motion.

**10. Mr. Thornton is not entitled to attorney fees on appeal.**

Mr. Thornton seeks attorney fees on appeal under Idaho Code section 12-121, alleging that "it is in fact frivolous for Clark or her substituted parties in interest to assert the right to use an easement when they do not own the dominant estate."

"The Court will award fees to a prevailing party under Idaho Code section 12-121 when the Court believes that the action was pursued, defended, or brought frivolously, unreasonably, or without foundation." *Sweet v. Foreman*, 159 Idaho 761, 767, 367 P.3d 156, 162 (2016) (internal quotation omitted). Here, Mr. Thornton has not prevailed on any of his issues on appeal. Accordingly, he is not a prevailing party and is not entitled to attorney fees.

**11. We decline to impose Rule 11 sanctions against the Barretts on appeal.**

For his final issue, Mr. Thornton argues that the Court should impose sanctions against the Barretts on appeal under Idaho Appellate Rule 11.2. His assertions in support of his request for sanctions include the following: "Barretts have participated in the court's misunderstanding and have continued to profit from the court's deception. . . . it is simply not possible for Barretts and their attorney not to be aware of the factual errors resulting from Clark's misrepresentations." He also asserts that

> the truth was deliberately hidden from the court. Barretts continue to allow the Court to believe that the two sisters owned a single, twenty-acre parcel, that the easement was created when Parcel A was severed from that parcel, and that the Partition Action resulted in a partition of the dominant estate.

It appears from Mr. Thornton's argument that he bases his allegations of deceit on the representation by Clark and the Barretts that Parcels B and C comprised a single, larger parcel. But whether the parcels were one parcel or two is irrelevant in light of the fact that both Clark and Pandrea were named as owners of the dominant estate in the 1992 Quitclaim Deed reserving the easement. As the district court stated, "the easement at issue in this case . . . grants a thirty-foot easement . . . to Mary E. Pandrea and Kari Clark for a right of way and use of utilities which serves their land"; "the partition lawsuit . . . has absolutely nothing to do with Pandrea's and Clark's easement rights across Thornton's land." It simply is not material whether the parcels were separate or not, so Mr. Thornton's assertion that the representation should give rise to sanctions is entirely meritless. Accordingly, we decline to impose sanctions on the Barretts.

## B. Ms. Thornton's Issues on Appeal

### 1. The district court did not abuse its discretion by imposing Rule 11 sanctions against Ms. Thornton prior to the appeal.

As intervenor, Ms. Thornton asserts that the district court abused its discretion by awarding $41,530.17 in Rule 11 sanctions against her. She argues that the evidence shows she made a proper investigation upon reasonable inquiry and that some of the attorney fees awarded were unreasonable, unrelated to the issues before the court, and unrelated to the litigation. Her arguments are literally identical, verbatim, to the corresponding arguments in Mr. Thornton's Appellant's Brief. These issues were addressed *supra* in section V.A.7. Accordingly, the same resolution applies: We affirm the district court's award of Rule 11 sanctions against Ms. Thornton because she has failed to show that the district court abused its discretion.

### 2. We decline to address whether the district court erred in imposing Rule 11 sanctions against Ms. Thornton for Mr. Thornton's motion for a stay pending appeal and waiver of supersedeas bond.

Ms. Thornton echoes Mr. Thornton's argument that the district court erred in awarding sanctions for Mr. Thornton's motion for stay pending appeal and waiver of supersedeas bond. This argument is literally identical, verbatim, to Mr. Thornton's corresponding argument save for two minor wording changes. This issue was addressed *supra* in section IV.A.9. Accordingly, the same resolution applies for the same reason: We decline to rule on Ms. Thornton's assertion that the district court erred by sanctioning her for Mr. Thornton's motion for stay because the record does not disclose a final judgment awarding monetary sanctions against her.

### 3. We decline to impose Rule 11 sanctions against the Barretts on appeal.

Ms. Thornton asks the Court to impose sanctions against the Barretts on appeal under Idaho Appellate Rule 11.2. Although not verbatim, her argument on this issue mirrors Mr. Thornton's corresponding argument. This issue was addressed *supra* in section IV.A.11. Accordingly, the same resolution applies for the same reason: We decline to impose sanctions against the Barretts.

## C. <u>Pandrea's Issues on Appeal</u>

Pandrea separately appealed the district court's summary judgment order, purporting to challenge the court's grant of summary judgment to Clark as against Thornton. The Barretts moved to dismiss the appeal in this Court. Eventually, Pandrea's appeal was assigned to a different docket number, 42673. That appeal was subsequently dismissed. The Barretts notified this Court of an alleged error in the case title of the instant case, stating that the title erroneously continued to identify Pandrea as a respondent on appeal. We issued a separate order stating that Pandrea remains as a named Respondent in this case. Pandrea filed a "respondent's brief" in this case.

Idaho Appellate Rule (2)(b) defines "respondent" as "the adverse party not initially seeking affirmative relief." Applying this definition, Pandrea is not properly a "respondent" in this appeal. Although at the district court she was adverse to Mr. Thornton, the adverse party initially seeking affirmative relief, she is not adverse on appeal because the judgments Mr. Thornton appealed have nothing to do with her. Further, her brief does not respond to the issues raised by Mr. Thornton. Indeed, she echoes some of Mr. Thornton's same challenges, in an effort to act adversely to Clark and the Barretts.

Pandrea's arguments are largely a retread of the arguments made by Mr. Thornton in his brief. We have found those arguments to be without merit. Pandrea's brief concludes:

> CLARK did not having standing to pursue this claim and the Judgment in this case should be reversed in favor of THORNTON. Furthermore, the district court should not have unlawfully issued a subsequent Judgment in violation of Idaho Code § 6-515, which would nullify the validity of the Judgment in this case. In the alternative, the judgment should be reversed in favor of THORNTON on his reconsideration motion based on the unambiguous deeds of record in this case for the three parcels of property at issue.

It is not clear why Pandrea insisted in remaining involved in this dispute when she apparently had nothing at stake in the outcome of the appeal, other than to perhaps carry on the fight with her sister. The Court did not have the opportunity to inquire of her at oral argument because she

notified the Court on August 30, 2016, that she was "rescinding" her request for oral argument, as she believed Ms. Thornton would "adequately represent [her] interests at the hearing [on August 31]."

**D.** <u>**The Barretts Are Entitled to Attorney Fees on Appeal.**</u>

The Barretts seek attorney fees and costs on appeal under Idaho Code section 12-121 and Idaho Appellate Rule 11.2(a). They argue that the same basis for the district court's award of attorney fees applies here: Mr. Thornton brought a frivolous case against Clark that was not well grounded in fact or warranted by law. They assert that both Mr. Thompson's brief and Pandrea's brief are frivolous, misleading, and contain what are undeniably false statements of fact.

"The Court will award fees to a prevailing party under Idaho Code section 12-121 when the Court believes that the action was pursued, defended, or brought frivolously, unreasonably, or without foundation." *Sweet*, 159 Idaho at 767, 367 P.3d at 162 (internal quotation omitted). In an appeal where the prevailing party sought attorney fees under section 12-121, the Court granted fees where the nonprevailing party "continued to rely on the same arguments used in front of the district court, without providing any additional persuasive law or bringing into doubt the existing law on which the district court based its decision." *Castrigno v. McQuade*, 141 Idaho 93, 98, 106 P.3d 419, 424 (2005). The nonprevailing parties "may have had a good faith basis to bring the original suit based on their interpretation of Idaho law" but "it was frivolous and unreasonable to make a continued argument" by appealing the district court's decision when on appeal "they failed to add any new analysis or authority to the issues raised below." *Id.*

On appeal, I.A.R. 11.2(a) requires an attorney or party to certify:

> that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Where the Court finds a violation of this Rule, it is required to impose appropriate sanctions. *Id.*

Here, the Barretts provide little detail supporting their request for attorney fees under either section 12-121 or I.A.R. 11.2(a). Nonetheless, given that Mr. Thornton's arguments on appeal largely mirror the same arguments that failed before the district court, without adding significant analysis or authority, we apply *Castrigno* and grant the Barretts' request for attorney fees and costs against Mr. Thornton under section 12-121. In light of this, we need not address

whether the Barretts are entitled to I.A.R. 11.2(a) sanctions against Mr. Thornton in the alternative.

Further, the Barretts do not expressly limit their request for attorney fees and costs on appeal to just Mr. Thornton. Under Idaho Code section 12-121, accordingly, we also award fees and costs against Pandrea. It was frivolous, unreasonable, and without foundation for Pandrea to file a brief as a respondent to supplement Mr. Thornton's challenges to Clark and the Barretts where Pandrea was not aggrieved by the judgments from which Mr. Thornton appealed and where Pandrea was not an adverse party to either Clark or the Barretts. The Barretts, therefore, are entitled to recover from Pandrea any attorney fees they may have incurred as a result of her frivolous brief.

**V.**
**CONCLUSION**

The judgment of the district court is affirmed. Attorney fees and costs on appeal are awarded to the Barretts as against Mr. Thornton and Pandrea.


Justices EISMANN, BURDICK, W. JONES and HORTON CONCUR.